STATE OF FLORIDA, ex rel. E. CLYDE VINING, v. R. A. GRAY, as Secretary of the State of Florida.

17 So. (2nd) 228                                          January Term, 1944
March 9, 1944                                                   En Banc
Rehearing Denied March 18, 1944

*Redfearn & Ferrell,* for relator.

*J. Tom Watson,* Attorney General, *Lawrence A. Truett* and *Woodrow M. Melvin,* Assistant Attorneys General, for respondent.

PER CURIAM:

This cause is before us on petition for alternative writ of mandamus whereby it is sought by relator to have this Court enter its judgment requiring R. A. Gray as Secretary of State to direct the election officials of the Thirteenth Senatorial District to place the name of the relator on the Democratic primary election ballots to be used in the primary election of May 2nd 1944, in said District as a candidate for the office of state senator when one D. C. Coleman had theretofore qualified as a candidate for such office subject to the action of the Democratic primary election.

The petition shows that relator waited until after 12:00 o'clock noon on Tuesday the first day of February, 1944, before starting or initiating the transportation of his application, oath of qualification and money required to pay fees for qualification as a candidate for such office to the Secretary of State at Tallahassee. The petition also shows that relator then used what he thought was, and probably was, the fastest available method to have such documents transported to Tallahassee and to the office of the Secretary of State. It is also shown that had the transportation company to which the documents were delivered for transportation, used the maximum of diligence in and about such transportation, it could have delivered the said documents to relator's special agent at the air port in Tallahassee who could and would have delivered the said documents to the office of the Secretary of State in Tallahassee before 12:00 o'clock midnight February 1, 1944.

Thus, it is shown that relator just took the risk of waiting until too late for starting the necessary documents on the way to the office of the Secretary of State, with the result that such documents reached the Secretary of State at his home after 1:00 o'clock a. m. February 2, 1944, and because of such delivery after the first day of February had expired the Secretary of State declined to enter and certify relator's name as a candidate for the office under consideration. ·

Section 1 of Chapter 21851, Acts of 1943, provides:

"Section 1. Nominations for election to the office of State Senator shall be had by a political party in a primary election pursuant to law. · Candidates for nomination for election to such office in a primary election shall be required to file their sworn statement and pay their. filing fee to the Secretary of State not later than the first day of February previous to the first primary election, and to pay or file receipt with the Secretary of State, in like manner as other candidates, for their party committee assessment, if any has been levied, not later than March thirty-first following."

Sections 102.31, 102.32, 102.33 and 102.34 F.S. 1941, (same F.S.A.) provide as follows:

"102.31. Filing fee of candidate.—

"Each candidate for nomination for any office herein provided for, shall be required to pay a filing fee at the time of filing the sworn statement provided for in No. 102.29. The amount of said filing fee shall be three per cent of the annual salary or compensation of the office sought by, the candidate; provided, that no filing fee shall be required of any candidate for any office to the holder of which no salary or compensation is required to be paid.

"102.32. Certain Candidate's sworn statement, receipts and filing fee.—

"Each candidate for nomination, except Justices of the Supreme Court and any other class of officers expressly provided for by law, for an office to be voted for by the electors of more than one county shall file his sworn statement and receipt for committee assessment if any has been levied and paid to the proper committee, and pay his filing fee as herein required to the Secretary of State not less than forty-five

days previous to the day of the first primary election; provided that any candidate may pay such assessment as has been levied by the committee to the Secretary of State, who may accept the same result and remit to the appropriate committee entitled thereto. Candidates for nomination to the office of Justice of the Supreme Court shall be required to file their sworn statement and pay their filing fee to the Secretary of State not later than the first day of February previous to the first primary election, and to pay or file receipt in like manner as other candidates for their party committee assessment, if any has been levied not later than March thirty-first following.

"102.33. County office candidate's sworn statement, receipt and filing fee.—Each candidate for nomination for an office to be voted for wholly within a single county shall file his sworn statement and receipt for committee assessment if any has been levied, with, and pay his filing fee as herein required, to the clerk of the circuit court of said county, who shall receive the same in his capacity as clerk of the board of county commissioners of said county, not less than forty-five days previous to the day of the primary election.

"102.34. Candidates entitled to have their names printed on official ballot. Each person who shall have filed his sworn statement and paid his filing fee and committee assessment, if any, as herein required, shall be entitled to have his name printed on the official primary election ballot; provided, that whenever the number of candidates of any political party for any office or position shall not exceed the number required to be nominated or elected to said office or position, the names of such candidates shall not be printed on the official primary election ballot, but such candidates are declared to be nominated for such office, or elected to such position."

These sections must necessarily be read in pari materia with the Act of 1943, supra.

The oath of qualification and the fee required were not filed with or tendered to the Secretary of State until later than the first day of February, 1944.

This is an action in mandamus, not a suit in equity. In mandamus the burden is on relator to show clearly that the

legal duty devolves upon the respondent to perform the act sought to be coerced.

We hold that relator has failed to meet such burden and, therefore, the alternative writ should be denied.

So ordered.

BUFORD, C. J., BROWN, THOMAS, SEBRING and ADAMS, JJ., concur.

TERRELL and CHAPMAN, JJ., dissent.

TERRELL, J., dissenting:

The majority opinion proceeds on the theory that relator did not undertake to qualify for the senate from Dade County until noon February 1, that his credentials reached the office of the Secretary of State after midnight which was too late to qualify since another candidate had qualified to run.

I think the majority opinion misses the point completely. It is no concern of this Court how many candidates have qualified to run, when they decided to qualify, what induced them to qualify or what means they employed to transmit their credentials to the Secretary of State. The applicable law requires that nominations for election to the office of state senator shall "file their sworn statement and pay their filing fee to the Secretary of State not later than the first day of February previous to the first primary election."

The point for determination is whether or not under this requirement of the law and the facts revealed relator should be barred for running for the state senate from Dade County because his sworn statement and filing fee reached the Secretary of State one hour and a half after midnight February 1.

The pertinent facts are that relator made up his mind to become a candidate for the senate on February first, that he had talked to the Secretary of State and found that he (Secretary of State) had ruled that his sworn statement and filing fee must be in his hands by midnight, that he had only an "A" gasoline ration card and could not make the trip to Tallahassee (over 500 miles) though he could have made it had there been no limitation on gas, that there was not an available plane reservation to Tallahassee that day, that other means of transportation were unavailing except air

express leaving Miami at 5:50 p.m. and arriving at Tallahassee at 10:10 p.m. In this situation relator placed his sworn statement and qualifying fee in the hands of the air express at 1:40 p.m., explaining the importance of placing it on the 5:50 plane. He also made arrangements with his representative in Tallahassee to meet the plane on arrival and deliver the package to the Secretary of State but the air express by oversight failed to send the package as instructed. It did send it on the plane leaving Miami at 7:55, which arrived in Tallahassee at 1:00 a.m. but was refused when presented to the Secretary of State by relator's representative.

The most elementary rule of statutory construction requires that every statute be construed to effectuate its purpose. The sole purpose of the statute under review was to provide order and system in the conduct of primary elections. It provided no definite hour during the day for a candidate's sworn statement and filing fee to be filed and since the first primary was more than two months off it would not have been affected regardless of the hour filed.

But in this case the fact that the sworn statement and filing fee were not offered to the Secretary of State before midnight was pure accident or oversight on the part of the air express company and in no sense the fault of petitioner. He had all day February 1 to qualify, his qualification on that date was as good and valid as if filed January 1. He employed the best means provided to transmit his credentials to Tallahassee in ample time, he took the precaution to have his representative meet the plane on arrival and since the law imposes no penalty for not filing them before midnight, I do not think it is within the power of this Court to do so. The law against homicide excuses accidental killing, certainly an accidental slip like this in qualifying to run for the senate should be given some allowance.

The interpretation given the statute by the minority of the Court not only bars petitioner of his right to run for the senate on a fluke but it works unequally on candidates for the senate throughout the state. A citizen of Gadsden or Jefferson County, or any county from Duval to Escambia, could make up his mind to run for senate at sundown on

February 1 and then qualify with the Secretary of State before midnight, but if he lives at Miami, Key West or Dry Tortugas, to be on the safe side he would have to make up his mind several days before hand. I submit that any candidate's sworn statement and filing fee that is placed in the mail, or in the hands of a common carrier, in time to reach Tallahassee on regular schedule during February 1 should be construed as full compliance with the law. Such an interpretation would be reasonable and just, would harmonize with the spirit of fair play, would put every candidate on the same footing regardless of where he lived and would meet every requirement of the statute. The law never contemplated that a candidate go to the expense of a trip to Tallahassee to qualify as a candidate for office even though he did not do so until the last day. Since qualification has reference to the primary election more than two months off it is not material whether the Secretary of State gets it at midnight or when he opens his office the next day.

I think the foregoing is ample to set at naught the fallacy of the majority interpretation of the statute but there is a more convincing reason. Democracy as we understand it was predicated on the common man divorced from cast or class, his social relations are based on mutual trust patterned on the ethics of Jesus and his judgments are presumed to be guarded by reason reinforced by intelligence, the direct opposite of the philosophy that might makes right and that the common man has no right that the state is required to respect. Every statute should be construed to preserve this fundamental principle to protect the common man in its enjoyment and it is the duty of our courts to do so.

The statute under review was not resigned to bar one from running for the senate and should not be so construed. It should be construed to promote the right to run, to promote the right of free and untrammelled choice by the electorate, to preserve the happiness and confidence of the individual in democratic government insofar as it does not trench on the same right of his neighbor. Such is justice under democratic processes, administered in any other manner it becomes justice by arbitrary fiat. If we are to be governed

by fiat justice instead of reasoned justice, why not revive the old Teutonic practice of "ordeal by battle" to appease the gods and ascertain where justice lurks? Or suppose we go the "whole hog" with the pagans by invoking the auspices to agitate some hooded scribe to look into the guts of a billy-goat and tell us where justice resides.

In fine, the essence of the statute under review is the promotion of orderly primary elections in which every qualified elector may express himself and wherein every citizen who desires may run for office, the fact of qualifying by midnight being a mere incident to the main purpose. To grant the relief prayed for creates no confusion, it prejudices no one's right and gives a sane, reasoned interpretation to the statute. Ashton v. Harris, 115 Fla. 3; 155 So. 100; In re Darling, 189 N. Y. 447, 82 N.E. 438; Langridge v. Dauenhauer, 120 La. 450, 45 So. 387; Fulton v. Licking County, 17 Ohio C.C. 396, 9 Ohio C.D. 427; Cooley's Constitutional Limitations, pg. 92.

I therefore dissent.

CHAPMAN, J., agrees to conclusion.