164 So.2d 195 (1964)
Anthony S. BATTAGLIA et al., Relators,
v.
Tom ADAMS, Secretary of State, State of Florida, Respondent.
No. 33389.
Supreme Court of Florida.
May 13, 1964.
*196 Parker, Parker & Battaglia and Anthony S. Battaglia, St. Petersburg, for relators.
James W. Kynes, Atty. Gen., and Wilson W. Wright, Asst. Atty. Gen., for respondent.
ROBERTS, Justice.
This is an original proceeding in mandamus filed by the relators to test the right of the respondent, as Secretary of State of the State of Florida, to comply with the request of The Honorable Richard M. Nixon that his name not be placed on the Florida Presidential Primary Ballot. Jurisdiction attaches under the constitutional authority of this court to "issue writs of mandamus and quo warranto when a state officer, board, commission, or other agency authorized to represent the public generally, * * * is named as respondent." Section 4(2), Article V, Fla. Const. F.S.A. The factual background to this matter is as follows:
On March 3, 1964  the qualifying deadline being noon of that day  the relators qualified as a slate of delegates to the Republican National Convention pledged to Richard M. Nixon. Under date of March 4th, the following telegram was sent by Mr. Nixon to the respondent:
"I HAVE JUST LEARNED THAT AN EFFORT IS BEING MADE TO ENTER MY NAME IN THE FLORIDA PRESIDENTIAL PRIMARIES. IN VIEW OF THE FACT THAT THIS ACTION WAS NOT AUTHORIZED BY ME AND IN ACCORDANCE WITH MY DECISION NOT TO ENTER MY NAME IN PRESIDENTIAL PRIMARIES I RESPECTFULLY REQUEST THAT YOU TAKE WHATEVER ACTION IS APPROPRIATE UNDER THE LAW OF FLORIDA TO KEEP MY NAME FROM BEING ENTERED ON THE FLORIDA PRESIDENTIAL PRIMARY BALLOT."
*197 In accordance with Mr. Nixon's request, and in reliance upon the advice of the Attorney General of Florida that he was justified in complying with such request (Attorney General's Opinions 064-32 and 064-37, dated March 9th and 10th, respectively), the respondent refused to certify the name of Mr. Nixon for inclusion on the primary ballot and also removed the names of the relators from the primary ballot.
By the mandamus proceeding sub judice, the relators request this court to direct the respondent "to place the names of Richard M. Nixon and the relators as a slate of delegates pledged to Richard M. Nixon, on the primary ballot, or in the alternative, place the names of the relators as an unpledged slate of delegates to the Republican National Convention on the said ballot * * *".
At the conclusion of oral argument counsel requested expeditious determination of the cause in view of the close proximity in point of time of the primary elections. The court thereafter entered its judgment denying the motion of peremptory writ and dismissing the cause, and announced that an opinion setting forth the reasons would be subsequently filed. This opinion sets forth our reasons for so holding.
In State ex rel. Burch v. Gray, Fla. 1960, 125 So.2d 876, this court denied without opinion a petition for mandamus under facts very similar to those here present. There, a nominating petition was filed by a slate of electors of a minority party (the so-called National States Rights Party) naming Governor Orval Faubus of Arkansas as their candidate for president. This was done without Governor Faubus's permission; and he sent a telegram to the then Secretary of State of Florida directing that his name be withdrawn from the Florida ballot as a candidate for president. There, as here, the Secretary of State requested the opinion of the then Attorney General as to his duties in the matter. He was advised by the Attorney General (The Honorable Richard W. Ervin, now a member of this court) that Governor Faubus was within his legal rights in demanding that his name not be used  that "the use of his name might well be a violation of his right of privacy above discussed." See Attorney General's Opinion 060-171, dated October 11, 1960. As noted above, a petition for mandamus to compel the Secretary of State to include the name of Governor Faubus on the general election ballot was then filed in this court and was denied by us without opinion  thereby holding, in effect, that the relators had not shown a clear right to the relief requested. It was upon this opinion of the Attorney General, and the action of this court in refusing the relief requested, that the present Attorney General based his opinion that Mr. Nixon's request should be granted and his name removed from the nominating petition and primary ballot.
And we agree that Mr. Nixon, like Governor Faubus, has an absolute right to say whether or not his name shall be advanced as a candidate for president or any other office by the relators or any other group. An unauthorized use of a person's name in this respect is recognized as a violation of his right of privacy. See State ex rel. LaFollette v. Hinkle, 131 Wash. 86, 229 P. 317, in which the court upheld the right of Mr. LaFollette to prohibit the use of his name by the so-called LaFollette State Party as their candidate for a state office. As pointed out by the court in the LaFollette case, nothing so exclusively belongs to a man or is so personal and valuable to him as his name, inasmuch as his reputation and the character he has built up are inseparably connected with it. See also 77 C.J.S. Right of Privacy § 5, p. 409; 41 Am.Jur. 940, Privacy, Sec. 20, and page 944, Section 24; and the cases collected in the annotation in 138 A.L.R. at page 22.
The relators recognize the applicability of the "right of privacy" rule in this situation but argue that Mr. Nixon, *198 by his governmental and political activities over the last several years and during the current presidential-election year, has "waived any right of privacy in this area" that he may have had. We do not agree. The fact that he may have consented to the use of his name in the Oregon primary, as stated by relators, does not mean that he has given a blanket consent to all comers, in whatever situation, to use his name in preferential primaries all over the Country. Mr. Nixon has unquestionably, as contended by relators, "by his accomplishments, fame, or mode of life * * * become a public personage, and he thereby relinquishes at least a part of his right of privacy", 41 Am. Jur., Privacy, p. 938, quoted in Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430; but this permissible "invasion" of the right of privacy of one who has become a public personage relates to the dissemination of legitimate news items or other matters of public interest. As stated in Jacova v. Southern Radio and Television Company (Fla. 1955) 83 So.2d 34, "* * * the right of privacy does not necessarily protect a person against the publication of his name or photograph in connection with the dissemination of legitimate news items or other matters of public interest." But this does not mean that a person's name can be used without his consent and against his wishes in the situation here present, any more than it could be used without his consent for advertising or charitable or other purposes for which the sponsorship of a well-known public personage is sought. We cannot agree, therefore, that Mr. Nixon has waived his "right to privacy" in respect to the use of his name in the manner sought by relators.
The relators' contention that to approve the removal of Mr. Nixon's name from their nominating petition deprives them of their "constitutionally guaranteed freedom to speak their sentiments as to whom they prefer as President of the United States" is equally untenable. No one would deny their right to bespeak Mr. Nixon as their personal candidate for the highest office in the land; but to inject a person against his will into a political arena where he is not prepared to and has no desire to do battle is an entirely different matter. And this we do not think they have a right to do.
It might be noted that in this area  the political arena  a person's right to manage his own political campaign and to say when and where he shall stand for office has been recognized as a personal right in many other jurisdictions; and it appears to be generally held that, in the absence of statutory inhibition, a candidate has a natural or inherent right to resign at any time and to have his name deleted from the ballot. See Black v. Board of Supervisors of Elections of Baltimore City, 232 Md. 74, 191 A.2d 580 (1963); Bordwell v. Williams, 173 Cal. 283, 159 P. 869, L.R.A. 1917A, 996; State ex rel. Rogers v. Hunt, 53 Wyo. 267, 81 P.2d 883; 18 Am. Jur., Elections, Sec. 175, p. 295; 29 C.J.S. Elections § 95, p. 130. In this state, a candidate's right to submit a timely application to withdraw from a primary election or general election is recognized by statute, Section 99.141(2), Fla.Stat, F.S.A.
Accordingly, it is our view that the respondent was within his legal rights in complying with Mr. Nixon's request by removing the name of Mr. Nixon from the relator's nominating petition and declining to certify it for inclusion on the primary ballot.
The relators contend also that the removal of Mr. Nixon's name from the primary ballot without leaving the relators' names on the ballot as an unpledged slate of delegates was erroneous and a violation of their right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 1 of the Declaration of Rights of the Florida Constitution F.S.A. The short answer to the "equal protection" contention is that this constitutional guaranty is applicable only to those similarly *199 situated; and it is crystal clear that Mr. Nixon and the relators are not similarly situated.
The relators also argue that their nominating petition, with Mr. Nixon's name deleted, is in effect a nominating petition of themselves as an unpledged slate of delegates to the Republican National Convention, as authorized by our statute, Sec. 103.101(2), Fla. Stat., F.S.A., so that the respondent should not have removed their names from the primary ballot. The record shows that the respondent did so upon the advice of the Attorney General that "* * * once the deadline for filing has passed no further alterations or changes can be made in a candidate's qualification papers * * *". We find no error in the respondent's actions or the Attorney General's advice in this respect.
This court has uniformly held that a candidate's qualification papers must be completed and filed within the time prescribed by statute, and that any errors or omissions cannot be corrected after the filing deadline has passed. See State ex rel. Taylor v. Gray, 1946, 157 Fla. 229, 25 So.2d 492; State ex rel. Vinning v. Gray, 154 Fla. 255, 17 So.2d 228. In State ex rel. Taylor v. Gray, supra, 25 So.2d 492, an error of calculation by a clerk in the Secretary of State's office, resulting in the payment of an amount insufficient to pay the qualifying fee, was not discovered until after the qualifying deadline had passed; and this court held that the prospective candidate had no right to have his name printed on the primary election ballot. The court said that the prospective candidate.
"* * * was charged with the duty, for his own protection, either of determining for himself that the lesser amount would be sufficient, or of at least tendering to the clerk the amount that he, Jones, knew the statute actually provided should be paid. Had he, Jones, exercised the slightest degree of care or prudence in the matter the mistake would have been discovered."
In the instant case, had the relators taken the trouble to find out from Mr. Nixon, in advance, whether he would object to having his name entered in the Florida presidential primary, or if they had not waited until the last minute to qualify as candidates for delegates pledged to Mr. Nixon, they would have been able to avoid the impasse in which they now find themselves. Having failed to do so, they cannot now be heard to say that their nominating petition should be treated as one for unpledged electors, any more than they could be allowed to file another nominating petition, specifying one other than Mr. Nixon as "their collective preference choice for president of the United States".
It would appear, therefore, that, by their failure to exercise "the slightest degree of care or prudence," the relators have lost not only the right to have their names appear on the primary ballot but also their qualifying fees, no provision being made by law for refund when a candidate withdraws or his name is stricken from the ballot. It has been so held by our various Attorneys General for many years, see Attorney General's Opinion 049-71, page 118 of the 1949-50 Biennial Report of the Attorney General, without a contrary expression by our Legislature, and we agree.
On April 22nd, 1964 judgment was entered providing:
"Relators filed their petition for alternative writ of mandamus, to which answer was filed by respondent. At the beginning of the hearing to determine the issuance of the alternative writ, it was stipulated in open court by and between the relators and respondent that the petition would be treated as an alternative writ and the answer as a return to same. It was further stipulated and agreed in open court that motion for peremptory writ would be filed instanter and that the cause would be argued in full on the merits at the hearing then in progress. Argument having been heard and the cause duly *200 considered, it is the view of the court that the motion for peremptory writ should be denied and the case dismissed."
For the reasons stated herein we now readopt the foregoing judgment denying the motion for peremptory writ and dismissing the cause.
It is so ordered.
DREW, C.J., and THOMAS, CALDWELL and ERVIN, JJ., concur.