SWANN, Judge.
The general election for candidates for the office of Monroe County Tax Collector was set for Tuesday, November 5, 1968. In the early afternoon of Friday, November 1, 1968, the incumbent Howard E. Wilson, who was the Democratic nominee and candidate for this office at the general election, unfortunately and suddenly passed away. A vacancy, therefore, occurred within the Democratic party for a nominee and candidate to fill this office more than seventy-two hours prior to the general election.
The Monroe County Democratic Executive Committee met on Friday evening, November 1, 1968, at about 8:00 P.M. and after due deliberation unanimously endorsed Harry F. Knight as its nominee to fill the vacancy. See Fla.Stat. § 100.111 (6) (b), (c), F.S.A.
Later that same Friday evening the Monroe County Commission met in a special session. It received a certification from the Secretary of the Monroe County Democratic Executive Committee that Harry F. Knight was its nominee to fill the vacancy and it directed the Supervision of Registration to place the name of Harry F. Knight on the ballot as the Democratic candidate for the office at the general election. See Fla.Stat. § 100.111(6) (b), F.S.A. The Supervisor was able to get *704 the necessary printing performed and the ballot prepared over the following weekend in time for the general election held on Tuesday, November S, 1968. The Democratic candidate, Knight, received 8,037 votes and the Republican candidate, Philip Speigel, received 3,879 votes.
On November 6, 1968, Knight paid his filing fee and took the “party” oath. On November 12, 1968, the Supervisor of Elections certified that Knight had been elected as Tax Collector for Monroe County at the general election held on Nov. 5, 1968. On November IS, 1968, the Republican candidate, Philip Speigel, brought suit against Knight; Helio Gomez, individually, and as County Judge, and Chairman of the Monroe County Canvassing Board; Wm. Billy Freeman, individually, and as Supervisor of Elections of Monroe County; and Gerald Saunders, individually and as Chairman of the Board of County Commissioners of Monroe County; and Gomez, Freeman, and Saunders as members of and constituting the Board of County Canvassers in and for Monroe County, Florida. No objections were ever made as to the necessity of other parties being named as additional parties or proper defendants.
Numerous allegations of irregularities in the election of Knight were claimed by Speigel. Defendants answered and a final hearing was held at which testimony and evidence was presented. It established that Knight had paid the filing fee and taken the “party” oath on November 6, 1968, the day after the general election but before assuming the office of Tax Collector. After the plaintiff rested, the defendants moved to dismiss and the trial judge dismissed the case with prejudice. Speigel has appealed.
On appeal he argues essentially, that Knight has violated those requirements of Fla.Stat. § 100.111(6) (c), which provide:
******
“ * * * [WJhere a nominee or candidate is selected by a committee to fill a vacancy in nomination or office, he shall pay the same filing fee and take the same oath as he would if he had regularly qualified for election to said office.”
* * * * * *
Speigel did not allege or attempt to prove that Knight was unfit or unqualified for the office; that there was any fraud, corruption, or coercion practiced by anyone in the election; that the election was not free and fair or that it was not held in good faith. It is his view that the requirements of the statute that the nominee or candidate “shall pay the same filing fee and take the same oath as he would if he had regularly qualified for election to said office” are mandatory and a failure to comply with these requirements prior to the general election results in a failure to legally qualify for the office and compel a holding that he was the only legal candidate and is the proper elected official.
Able counsel for Speigel argues that prior to 1965 the statute contained no such mandatory requirements, and that by adding these specific directives, in the 1965 amendment, the legislature provided specific and mandatory guidelines for the nominee or candidate, which must be followed. See In re Opinion to the Governor, Fla. 1952, 60 So.2d 321.
Knight and the other defendants argue that this action is not against the public officials who allowed and directed Knight’s name to appear and be printed on the ballot and that if there were any irregularities in the proceedings they were technical and were not so substantial and mandatory as to require an order setting aside a majority expression by the electorate at the ballot box.
Willets v. North Bay Village, Fla. 1952, 60 So.2d 922, 924, was a case in which only three councilmen out of five remained on the city council due to unfilled vacancies. Of these, two called for a referendum election to approve a new city charter. The election was held on the date announced. It was regular, and a majority of the elec *705 tors voted to approve the charter. Although the court had previously held that two councilmen did not constitute a legal quorum of the commission and could not, therefore, perform valid acts, it nevertheless held the election to be valid and approved the election result, saying:
“It is perfectly clear that the notice given served all the purposes of a legal one. Whether it was a directory or a mandatory prerequisite to a legal election, we do not have to decide. The rule seems approved on good authority that whether mandatory or directory, infor-malities or irregularities which do not affect the result of an election, will not render it invalid(Emphasis added)
In Gilligan v. Special Road and Bridge Dist. No. 4 of Lee County, 74 Fla. 320, 321, 77 So. 84, 85 (1917), an action was brought to validate a bond issue. Gilligan, a taxpayer, intervened and objected, alleging that the election held to approve the bond issue was void because of certain irregularities in the conduct thereof. The Supreme Court of Florida stated:
“It is conceded by appellant that under a long line of decisions in this state the doctrine is firmly established that irregularities in the holding and conduct of popular elections will not invalidate them, where they have been free and fair, and the result was not changed by reason of such irregularities.”
In Pearson, et al. v. Taylor, 159 Fla. 775, 776, 32 So.2d 826, 827 (1947), a suit was filed to vacate and set aside the results of a local option election. By agreement in the stipulated facts, it was admitted that the petition submitted to the Board of County Commissioners for calling the election contained less than the required 25% of the qualified electors as disclosed by the county registration books. The trial court thought that under these facts the county commissioners were without jurisdiction to call the election and held the election to be null and void. In reversing, the Supreme Court of Florida said:
“The aggrieved party cannot await the outcome of the election and than assail preceding deficiencies which he might have complained of to the proper authorities before the election. * * * It is possible that the opinion in * * *, persuaded the lower court to its conclusion because there we said, in effect, that the filing of a petition signed by the required number of signers was a precedent to any legal election. This statement, like all enunciations of law, must be considered in the light of the factual case before us. There we were dealing with the question raised prior to the election which is not the case here. We have recognized the difference hence, it is not necessary to look to other jurisdictions. We have said that the constitution places a mandatory duty on the legislature to follow certain procedure as a necessary prerequisite to bringing about an election to amend the constitution, however, more than once we have said, in substance, that the neglect to follow such procedure was fatal if raised before the election, yet the defect was cured by the election itself.” (Emphasis added)
See also Cave v. Conrad, 216 Ind. 304, 24 N.E.2d 110 (1940); Tate v. Morley, 223 Ga. 36, 153 S.E.2d 437 (1967); and Blackmer v. Hildreth, et al., 181 Mass. 29, 63 N.E. 14 (1902).
We have been directed to no provision of the election code which would require ouster of an otherwise properly elected public official who failed to take the oath or pay the filing fee. The evidence indicates that Knight was busy “politiking” in Monroe County on Monday, November 4, 1968, the only day that the courthouse would have been open during this period. His failure to comply might have been grounds for enjoining the proper officials from placing his name on the ballot or for other relief prior to the general election. See State ex rel. Taylor v. Gray, 157 Fla. 229, 25 So.2d 492 (1946); State ex rel. Vining v. Gray, 154 Fla. 255, 17 So.2d 228 (1944).
*706 A different rule applies to technical or procedural irregularities which occur and are challenged prior to a general election than to those which are discovered and challenged after the general election, in the absence of corruption or fraud or a statutory penalty requiring an ouster of the elected official or a vacancy in the office.
The general rule followed in Florida is in 11 Fla.Jur., Election § 123.
“The rule is general that where ballots have been cast by voters who were, at the time, qualified to cast them, and such voters did all on their part that the law required to make their voting effective, informalities or irregularities in the holding and conduct of the election and the handling of ballots, whether with respect to directory or mandatory prerequisites to a legal election, will not invalidate such election or disfranchise such voters, at least where the results were not changed by reason of such informal-ities or irregularities.”
Thus, the courts should not set aside an election because some official has not complied with the law governing elections, where the voter has done all in his power to case his ballot honestly and intelligently, unless fraud has been perpetrated or corruption or coercion practiced to a degree affecting the result.
The disposition and duty of courts are to sustain popular elections whenever they have been free and fair and it is clear that the voters have not been deprived of their right to vote and the result has not been changed by irregularity.” (Emphasis added)
See also Carn v. Moore, 74 Fla. 77, 76 So. 337 (1917), State ex rel. Smith v. Burbridge, 24 Fla. 112, 3 So. 869 (1888).
Under the facts and circumstances peculiar to this case, the final judgment of dismissal with prejudice is hereby
Affirmed.