ERVIN, Chief Justice.
This is an original mandamus action at issue on an alternative writ and a response thereto of the Florida Secretary of State.
The Relator, Louis R. Beller, seeks to require the Secretary of State to certify his name as the candidate of The New Party of Florida for Governor of the State of Florida in such manner as to cause his name to *504 be printed upon the General Election ballot in the November General Election of 1970.
The alternative writ alleges relator is a qualified elector of the State of Florida meeting all residential, age and citizenship requirements to serve as Governor of the State if elected.
The writ further alleges relator has been nominated by the Executive Committee of The New Party of Florida to be its candidate for Governor of the State of Florida and alleges that a letter confirming such nomination and requesting certification of his name has been transmitted to the respondent, Secretary of State of the State of Florida.
The writ further alleges as follows:
“That your petitioner [Relator] has been informed by the Respondent’s Office that there are no methods other than through a primary election for his name to be placed upon the General Election ballot.
“That in accordance with Chapter 97.-021(14) in order for a party to hold a primary election it would have had to have 5% of the total registered electors of the state registered as members by January 1, 1970.
“That there are no alternative reasonable methods of getting on the ballot, or having a certification issue, that there is no petition method available for state office seekers to achieve ballot status.
“That your petitioner [Relator] does not question the state’s right to regulate and provide qualifications for a Party to be placed upon the ballot, or participate in a primary, provided these restrictions are reasonable, but your petitioner alleges that the present statute is arbitrary, unreasonable, and was conceived not to regulate but to bar any minority party from attaining ballot status.
“That this amounts to a disenfranchisement of the electors denial of due process of law under both the State and Federal Constitutions, and the denial of the right to vote for a candidate of the electors choice.
“That your relator is the nominated candidate of the ‘New Party of Florida’ since the limiting statute is unconstitutional his name should be certified by the State officer designated to do so as a contestant in the General Election.
“That this petition is filed in this Court in that the matter is of grave importance in that the voters of the State of Florida are being disenfranchised and deprived of their fundamental rights to vote for the candidate of their choice. That this Court has original jurisdiction when a state officer is named as a respondent. Battaglia v. Adams, [Fla.] 164 S.2d 195.”
The response of Respondent Secretary of State of the State of Florida to the alternative writ is to the effect that mandamus will not lie in this cause as there is no duty imposed upon respondent to perform the act sought by relator; that mandamus will not lie to compel the Secretary of State to put the name of a candidate for governor from a minority party on the ballot, citing State ex rel. Jackson v. Gray, 125 Fla. 445, 170 So. 137, and that relator has failed to allege facts which would establish he is entitled to a peremptory writ of mandamus.
We recognize that statutory periods in the year 1970 for complying with such procedures as qualification of candidates for primary nomination of recognized political parties for the office of Governor of the State (Section 99.061(2)); for holding of such primaries of such parties therefor (F.S.Section 100.061, F.S.A.), and for printing the official ballot, including the names of such nominees thereon for the General Election of 1970 (F.S. Sections 101.151, 101.191 and 101.251, F.S.A.) have not arrived, occurred or elapsed. However, these statutory preliminaries do not apply to relator since he is not seeking to be a candidate for the governorship under *505 the banner or sponsorship of a recognized” political party.
His proposed candidacy, he alleges, is to be under the aegis of The New Party of Florida, which is not a “recognized” political party under Florida law. Accordingly, we consider he is entitled at this time to have the merits of the alternative writ decided by this Court since it is directed to the Florida Secretary of State and involves current claimed rights of a minor political party seasonably raised to have the name of its proposed candidate for Governor printed on the official ballot at the forthcoming General Election of 1970 of the State of Florida since such minor political party is not authorized to hold primaries under Florida law. See Section 4(2), third paragraph of Article V, State Constitution, F.S.A., and F.R.A.P. Rule 4.5b(l), 32 F.S.A. Compare Battaglia v. Adams, Fla. (1964), 164 So.2d 195.
In order to dispose of the merits of this case it is appropriate first to consider the state statutes that are applicable to “unrecognized” or minority political parties.
F.S. Section 97.021(14) F.S.A. reads as follows:
(14) “Minority political party” is any group as defined in paragraphs (a) and (b) of this subsection which on January 1, preceding a primary election does not have registered as members five per cent (5%) of the total registered electors of the state.
(a) Any group of citizens may organize as a political party if the general purpose of the organization is for election to office of qualified persons, and the determination of public issues under the accepted democratic processes of the United States.
(b) Any such group may be recognized as a political party which on January 1 preceding a primary election has registered to vote as members more than five per cent (5%) of the total registered electors of the state. Such political party shall nominate its candidates for elective offices to be voted for in the next general election, in the primary and in no other manner except to fill vacancies in nomination as otherwise provided.
Relator admits that he belongs to a party (The New Party of Florida) “which * * has fewer than 5% of the voters of the State registered as members.” Notwithstanding, he contends it is proper for his party through its executive committee to select him as its nominee for governor, which the committee has done, citing F.S. Section 99.061(2) F.S.A. providing as follows :
“(2) Candidates for nomination of any recognized political party for office of governor and all other candidates for state offices are required to file their qualification papers and pay their qualification fees and party assessment to the secretary of state at any time after noon of the first filing date, which shall be the forty-ninth (49th) day prior to the first primary, but not later than noon of the thirty-fifth (35th) day prior to the date of the first primary in the year in which any primary is held.” (Emphasis supplied.)
In essence, relator contends there is a “gap” or vacuum creating a vacancy in nomination situation in the statutory language, i. e., in Section 97.021(14) which has the result of authorizing the Executive Committee of The New Party of Florida to name him as its candidate for Governor because it is a minor political party pursuant to Section 97.021(14) under the definition first contained therein and under paragraph numbered (a), since no provision is made for it to hold primaries to select its candidate for governor, as is provided for a “recognized” political party under paragraph numbered (b) which on January 1 preceding a primary election has registered to vote as members more than 5% of the total registered electors of the state. He contends that in the absence of any author *506 ity for the primary election of its candidate for governor, his party’s Executive Committee is authorized to select such a candidate pursuant to the authority of the election laws, citing particularly the authority provided in Section 99.061(2) F.S., which refers to “all other candidates for state office” than those to be selected in primaries of “recognized” political parties.
Absent eligibility of a political party to hold a primary as a “recognized” party, it has been held no authority exists under state law to obtain the printing of the person’s name its executive committee selects as its candidate for governor on the General Election ballot. See State ex rel. Jackson v. Gray, supra. Of course such a group or minority political party could sponsor such a person as a write-in candidate pursuant to state law.
The final contention made by relator is that if such is the construction of the Florida election laws as to his claimed right to be the candidate of his minor political party for governor of the State by reason of his selection as such by its executive committee, then such laws are unconstitutional and violative of the First and Fourteenth Amendments to the United States Constitution, citing Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24.
Williams v. Rhodes, supra, dealt with cases brought by Alabama Governor George Wallace’s American Independent Party and the Ohio Socialist Labor Party to obtain positions on the ballot for their respective candidates as presidential electors in the State of Ohio in the general election of 1968. Ohio laws required a new party to obtain signatures of more than 15% of the qualified electors of the state on petitions to be presented prior to February 7, 1968, in order to enable the party to obtain ballot position in the general election in November, 1968. While the American Independent Party obtained the necessary number of signatures, the Socialist Labor Party did not. In fact, the latter had only 108 members in Ohio. Ohio law also authorized write-in candidacies in the general election. Ohio laws make no provision for ballot position for independent candidates as distinguished from political parties. The Supreme Court of the United States held in Williams v. Rhodes that the Ohio statutes violated the freedom of association clause of the First Amendment and the due process and equal protection of law clauses of the Fourteenth Amendment of the Constitution of the United States. The Court rejected arguments by the State: That the electors would best be served by the “two party system”; that such laws eliminate the possibility of election by mere plurality; that the disaffected may obtain relief through existing party structures; and that a multiplicity of parties might seek ballot position and render the election machinery confusing and impracticable if such laws were struck down.
Justice Black, writing for the majority in Williams v. Rhodes, supra, held the Ohio American Independent Party (Wallace) which had secured on its petitions the signatures of more than 15% of the qualified electors of the state (although they were secured well after the statutory deadline, February 7, 1968) was entitled to ballot position on the Ohio General Election ballot. The Socialist Labor Party which appealed along with the American Independent Party and had only 108 members in Ohio was denied ballot position on the General Election ballot solely because its application for similar relief came on for consideration by the Court at so late a date in the election year after the granting of relief to the American Independent Party that the Court accepted the State’s contention that to then allow the Socialist Labor Party ballot position would disrupt the process of its election.
Admittedly it is somewhat difficult to conclude exactly what is the overall rationale of the court majority in Williams v. Rhodes, particularly insofar as to the maximum percentage of qualified elector petitioners that a state may require which will not unconstitutionally burden minority par *507 ty and independent condidacies. But at any rate the Ohio petition deadline of February 7, 1968, was voided as was the statute requiring a minority party to obtain the names of 15% or more of the registered electorate of Ohio on its petition to entitle it to ballot position on the ground that these procedures placed an undue and cumbersome burden on the right of citizens to freely join together and associate in the formation of a viable, new political party.
In his opinion, Justice Black 'said (page 33, 89 S.Ct. page 11):
“Thus, Ohio’s burdensome procedures requiring extensive organization and other election activities by a very early date, operate to prevent such a group from ever getting on the ballot and the Ohio system thus denies the ‘disaffected’ not only a choice of leadership but a choice on the issues as well.”
And (page 34, 89 S.Ct. page 12):
“ * * * [T]he totality of the Ohio restrictive laws taken as a whole imposes a burden on voting and associational rights which we hold is an individious discrimination, in violation of the Equal Protection Clause.”
Justice Harlan appears to be at center of the court majority in suggesting percentages of petition electors that could be required by a state in order to gain ballot position on printed General Election ballots by a minority party or independent candidate, without unconstitutionally burdening the right to form a new political party which could function politically with its candidates’ names printed on official ballots or to be a recognized independent candidate whose name would be printed on official election ballots. In a foot-note to his concurring opinion, he states (at page 47, 89 S.Ct. at page 19):
“Ohio’s present statutory scheme is a product of legislative action taken between 1948 and 1952. Before that time, independent candidates had been granted a place on the ballot if they could gather the signatures of registered voters in the number of 1% of those voting at the preceding gubernatorial election and present their petitions 60 days before the general election. The State’s experience under this unexacting regime is instructive. Voting statistics compiled by Ohio’s Secretary of State reveal that since 1900 no more than seven parties have appeared on the ballot to compete for a major statewide or national office. And even this number was not attained after 1908. During the last 10 years of the old regime, there are only two third-party candidates of record. The State took effective action only after Electors pledged to Henry A. Wallace gained some 30,000 votes out of the 3,000,000 cast in 1948. Since Harry S. Truman carried the State by some 7,000 votes, the Wallace vote might well have been decisive if it had increased marginally.
The other 49 States may be grouped in the following categories with regard to the size of the barriers they raise against third-party candidacies:

Signatures Required as a % of Electorate No. of States

De minimis to 0.1%. 16
0.1% to 1% . 26
1.1% to 3% . 3
3.1% to 5%. 4”
The percentages less than 15% appearing in his footnote appear not to be disapproved by the court majority. Since a “recognized” political party in Florida is only required to have for its membership just more than 5% of the total registered voters of the state, it would at present not appear unreasonable, taking into consideration the rationale of Williams v. Rhodes, supra, to require a state-wide minor political party candidate or an independent candidate to secure a qualifying petition of 5% or more of the signatures of the registered qualified electors of the state. This would appear to amount to the equitable equivalent of the percentage of registered qualified electors now required for “recognized” political *508 parties in the state, and would not be a serious departure from the present requirements of Section 97.021(14) (b), Florida Statutes, for “recognized” political parties, the only difference being the elimination of the January first deadline and the requirement that the party has registered to vote as members more than 5% of the total registered electors of the state, rather than registered qualified elector petitioners.
It is admitted that the 5% petition requirement may be open to future question as to whether it is too great, but at least it appears to presently meet the outer limit of the court majority’s percentage suggested in Williams v. Rhodes. Moreover, the Florida Legislature is now in session and it is possible the 5% figure may be reduced by it prior to the 1970 General Election.[1]
In addition to his footnote supra, Justice Harlan also said (pp. 45-47, 89 S.Ct. pp. 18-19):
“A word should be added about the constitutional status of Ohio’s requirement that a third party, to qualify for ballot position, must collect the signatures of eligible voters in a number equal to 15% of those voting at the last gubernatorial election. As I do not understand the State to contest the fact that Mr. Wallace and his partisans have successfully gathered more than the 433,100 signatures required by law, we can only properly reach this issue in the Socialist Labor Party case — for this Party did not even attempt to comply with the statutory command. While the Court’s opinion, striking down Ohio’s statutory scheme in its entirety, does, as I read it, afford the Socialist Labor Party declaratory relief from the 15% provision, I think it well to deal with it more explicitly than the Court has done.
“In my view, this requirement, even when regarded in isolation, must fall. As my Brother BLACK’S opinion suggests, the only legitimate interest the State may invoke in defense of this barrier to third-party candidacies is the fear that, without such a barrier candidacies will proliferate in such numbers as to create a substantial risk of voter confusion. Ohio’s requirement cannot be said to be reasonably related to this interest. Even in the unprecedented event of a complete and utter popular disaffection with the two established parties, Ohio law would permit as many as six additional party candidates to compete with the Democrats and Republicans only if popular support should be divided relatively evenly among the new groups and with fundamental freedoms at stake, such an unlikely hypothesis cannot support an incursion upon protected rights, especially since the presence of eight candidacies cannot be said, in light of experience, to carry a significant danger of voter confusion. As both Ohio’s electoral history and the actions taken by the overwhelming majority of other States suggest, opening the ballot to this extent is perfectly consistent with the effective functioning of the electoral process. * * * Ohio has fallen far short of showing the compelling state interest necessary to overcome this otherwise protected right of political association.”
Returning to the Opinion of the Court by Mr. Justice Black, it will be noted that he said (page 29, 89 S.Ct. page 10) :
“We therefore hold that no State can pass a law regulating elections that violates the Fourteenth Amendment’s command that ‘No State shall * * * deny *509 to any person * * * the equal protection of the laws.’ ”
Also:
“There is * * * no reason why two parties should retain a permanent monopoly on the right to have people vote for or against them. * * * New parties struggling for their place must have the time and opportunity to organize in order to meet reasonable requirements for ballot position, just as the old parties have had in the past.”
It is obvious that similar Florida laws including Section 97.021(14) are unconstitutional under Williams v. Rhodes, insofar as they have been applied and construed in such cases as State ex rel. Jackson v. Gray, supra, to reject ballot position to minor political party and independent candidacies.
The foregoing considered, we conclude a peremptory writ of mandamus should be denied herein without prejudice, however, to the relator’s timely reapplying to the Secretary of State for qualification as his party’s candidate for Governor, provided he or his party secures signatures of 5% or more of the registered qualified electors of the state, authorizing his name to be included on the 1970 General Election ballot as his party’s candidate, which petition should be submitted to the Secretary of State at a time sufficiently prior to the period of qualification that would permit its verification. In this connection we conclude the deadline of January 1, 1970, is unreasonable and void for reasons similar to those expressed in Williams v. Rhodes, supra. We also conclude that a petition of registered qualified electors of 5% or more of the total of the state’s registered voters, rather than registered elector members of the party numbering more than 5% of the total state registration, should be the principal criterion for printed ballot position. We are of the opinion that the language of F.S. Section 100.111(6) (d) F.S.A., read in connection with the holding in Williams v. Rhodes, is sufficently broad to supply the gap or deficiencies in Section 97.021(14) and authorizes the respondent Secretary of State to promulgate appropriate rules and regulations to implement under said statutes any timely re-application of relator pursuant to the foregoing criteria.
Of course, the Legislature which is now in session may find it more appropriate to otherwise provide petition machinery for minor political party candidates and independent candidates under a lesser percentage requirement than 5% or more of said petitioners indicated above, and otherwise provide the necessary petition procedures.
In any event, unless some alternative is permitted or provided to fill the “gap” in our election processes to accommodate candidacies of minor political parties and independent candidacies which in the process could protect against a proliferation of candidacies rendering the state’s election processes confusing and impracticable, it is reasonable to believe that the majority decision in Williams v. Rhodes, supra, will support timely and appropriate legal actions requiring the printing on the General Election ballot the names of all minor political party candidates and independent candidates who are registered qualified electors and are without disqualification other than being minor political party candidates or independent candidates, and despite the fact their candidacies are not coupled with or sponsored by any elector petitions because the state has failed or refused to authorize or provide for any such petitions.
The alternative writ is discharged.
ROBERTS, ADKINS and BOYD, JJ., concur.
CARLTON, J., concurs specially with opinion.

. In a resume of pending proposed legislation before the present session of the Florida Legislature, to fix a percentage of elector petitioners for minor political party and independent candidates, Editor Malcolm Johnson of the Tallahassee Democrat, in the issue of May 11, 1970, points out that 1% of the statewide registration would require 27,000 petitioners and 3% would require 81,000 petitioners, the State’s total of registered voters being 2,700,000.