DEKLE, Justice.
Former President of the United States, Harry S. Truman, once said in reference to the political arena that, “If you can’t stand the heat, you should stay out of the kitchen.” Perhaps this observation of that terse patriot of Independence, Missouri, expresses in a sense the answer to the challenge by petitioner, Los Angeles’ May- or Sam Yorty, to Florida’s new presidential preference primary law which places *147 on the ballot for March 14, all “presidential candidates who are generally advocated or recognized in news media throughout the United States or in the state.” [1]
We recognize the sacrifice that it is to privacy to have your name submitted to the people as a candidate for public office without having the choice whether your name will appear on the ballot. Privacy, however, yields to public interest when a citizen chooses to reach for the high goal of the presidency of these United States. He becomes a public figure in the sense expressed in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[2]
*148 Petitioner Yorty seeks writ of mandamus or prohibition to require respondents Secretary of State Stone and Committee members named to comply with petitioner’s request to remove his name from the list of candidates to appear on the March 14, 1972, Florida presidential primary ballot. There is no dispute that Mayor Yorty is recognized in the news media throughout the country, as well as in Florida, as a declared candidate for President of the United States; and that he is actively campaigning in the New Hampshire primary of March 7. He just does not wish to submit his name in the Florida primary, contending that he “doesn’t have the financial resources to participate in all of the important primaries” and that thereby his inability to campaign in Florida could cause “irreparable harm” to his national candidacy if he appeared on the ballot in Florida “and then fails to do well;” that placing his name on the ballot in Florida is in violation of his right of privacy under Fla. Const. art. I, § 2, F.S.A., and violates due process of law under Fla.Const. art. I, § 9, as well as such rights under Amendments I and XIV of the United States Constitution. Jurisdiction vests under Fla. Const, art. V, § 4(2).
Petitioner cites as his authority this Court’s earlier case of Battaglia v. Adams, Secretary of State, 164 So.2d 195 (Fla.1964). The Attorney General says that Battaglia does not apply and is to be distinguished because there President Richard M. Nixon, then a private citizen and not an announced candidate for office, requested and was successful in having his name removed from the primary ballot in Florida. Battaglia was of course prior to the present statute. Our Chief Justice Roberts in that opinion referred to State ex rel. Burch v. Gray, 125 So.2d 876 (Fla.1960), wherein a slate of electors in Florida sought to include the name of Governor Orval Faubus of Arkansas on the Florida presidential primary ballot. Governor Faubus requested that his name be removed from the ballot and this Court affirmed the opinion of then Attorney General Richard W. Ervin, a present Justice on this Court, to remove his name from *149 the ballot. There Mr. Nixon was not isolating a given primary in one of the states from which he sought to withdraw his name as a primary preferential candidate, but based his request for removal of name from the ballot upon “my decision not to enter my name in presidential primaries,” thus removing his name from any primary consideration as a candidate. It would seem that it is a matter of “all or none” in a determination of this kind.
In Battaglia, we also said:
“. . . it appears to be generally held that, in the absence of statutory inhibition [which now has occurred], a candidate has a natural or inherent right to resign at any time and to have his name deleted from the ballot [citations omitted].” (bracketed portions added)
Even in Battaglia, therefore, our view of protected privacy was predicated upon “resigning,” to have his name deleted. He can do that now under the new statute, if he will execute the affidavit. This, the petitioner states he will not do.
Here, the public interest transcends the bounds of privacy accorded to an individual citizen. The candidacy involved is for a national office, of course, and the candidate can no more pick and choose in which states he may be considered, than a candidate for state office might choose to withhold his name in a given county or counties within the 67 counties in Florida where he may feel that he is weak or could not afford the expense of compaigning, as is suggested by petitioner here.
The people also have a right to an orderly election. There may be a reasonable provision to keep the ballot free of unwarranted and meaningless names submitted which are not in serious contention and which would only burden the ballot and detract from those candidates who are in serious contention on the national or state levels. This control is sought to be provided by the terms of the statute.
The statute is a valid exercise of the police power of the state by the Legislature, in whom that power reposes. It is applied equally to all candidates for the presidency and each stands on the same footing, so that there is no denial of equal protection and due process under the Florida and United States Constitutions. In this posture of the case we do not need to reach the contention that there was a waiver by Mayor Yorty of his right of privacy which is discussed in Battaglia, supra, and also in State ex rel. Haft v. Adams, 238 So.2d 843 (Fla.1970), and New York Times Co. v. Sullivan, supra.
The Florida statute makes provision for a candidate to avoid having his name placed on the ballot by submitting an affidavit that he is not and does not presently intend to become a candidate for President at the upcoming Nominating Convention.
Mayor Yorty argues that the state .is “compelling him” to be on a ballot where he does not prefer to be and that this denies him his right of privacy and equal protection under the First and Fourteenth Amendments of the United States Constitution. The aforementioned “escape clause” grants him the “preference” so that he is really making that decision by declaring himself to be a candidate and refusing to exercise the statutory provision mentioned. The candidate cannot “have his cake and eat it too.”
A matter of such magnitude as the selection of the best possible candidate for the highest position in this nation should be controlled by the public’s right to a complete expression of their views and not by the individual’s personal and tactical choices which he exercises as he pursues this goal. The people of Florida should not be denied the right to express themselves in such a choice on any announced candidate, while other states are granted that right of choice, as such candidate chooses. This would be a denial of the voters’ right of free choice and due process. Other states including Ohio, Wiscon *150 sin and Oregon have similar statutes, although no case on those statutes has been cited to us.
We accordingly uphold the constitutionality of those sections of Fla.Stat. §§ 103.-101(3) (a) and 103.101(4), F.S.A. contested here.
Writs of mandamus and of prohibition are denied. The cause is dismissed and in light of the limited time remaining under the statute, we dispense with petitions for rehearing.
It is so ordered.
ROBERTS, C. J., and ADKINS, BOYD and McCAIN, JJ., concur.
ERVIN and CARLTON, JJ., dissent with opinion.

. “PRESIDENTIAL ELECTORS: POLITICAL PARTIES; COMMITTEES
“E. S. 103.101 Presidential preference primary.—
“(1) This act shall be known and may be cited as the Florida presidential preference primary law.
“(2) Each political party which had east for its candidate for president and vice-president in the last election more than ten percent (10%) of the total vote east for president and vice-president in the state, and with which ten percent (10%) of the total registered electors have registered by February 1, of each general election year, shall elect on the second Tuesday in March in 1972, and on the second Tuesday in March every four (4) years thereafter, one person to be the candidate for nomination by his party for president of the United States. Each elector of such party may vote his preference for one (1) person to be the candidate for nomination by his party for president.
“(3) The name of any candidate for a political party nomination for president of the United States shall be printed on the ballots:
“(a) Upon the direction of a presidential candidate selection committee composed of a non-voting chairman who shall be the secretary of state, the speaker of the house of representatives, the president of the senate, the minority leaders of both the house and senate, and the chairmen of political parties required to have a presidential preference primary under this act, or their respective designees. The secretary of state, during the second week in January each year a presidential preference primary is held, shall prepare and publish a list of names of presidential candidates who are generally advocated or recognized in news media throughout the United States or in the state. The secretary of state shall submit such list of names of presidential candidates to the selection committee during the second week in January each year a presidential preference primary election is held. Each person designated by the secretary of state as a presidential candidate shall appear on the presidential preference primary ballot unless all committee members of the same political party as the candidate agree to delete such candidate’s name from the ballot. The selection committee shall meet in Tallahassee during the third week in January each year a presidential preference primary is held, on a date publicly announced by the chairman. The selection committee shall publicly announce and submit the names of presidential candidates who shall appear on the presidential primary ballot to the department of state no later than January 20 each year a presidential preference primary election is held. Not later than February 1, the department of state shall notify each presidential candidate designated by the committee. Such notification shall be in writing by registered mail with return receipt requested. (Emphasis added.)
* * * * *
“(4) A candidate’s name shall be printed on the Florida presidential preference primary ballot unless he submits to the department of state by noon February 15 in each year a presidential preference primary is held, an affidavit stating without qualification that he is not now, and does not presently intend to become a candidate for president at the upcoming nominating convention. If a candidate withdraws pursuant to this act, the department of state shall notify the state executive committee that the candidate’s name will not be placed on the ballot.
“ (5) The names of candidates for political party nominations for president of the United States shall be printed on official ballots for the presidential preference primary elections and shall be marked, counted, canvassed, returned, and proclaimed in the same manner and under the same conditions, so far as the same are applicable, as are other state elections.”

. New York Times Co. v. Sullivan, supra (p. 268, 84 S.Ct. p. 720) :
“ . . . for ‘public men, are, as it were, public property,’ and ‘discussion cannot be denied and the right, as well as the duty, of criticism must not be *148 stifled.’ ” From Beauharnais v. Illinois, 343 U.S. 250, at 263-264, 72 S.Ct. 725, 96 L.Ed. 919.
New York Times Co. v. Sullivan, supra (p. 269, 84 S.Ct. p. 720) :
“The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, ‘was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.’ Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498. ‘The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system.’ Stromberg v. California, 283 U.S. 359, 369, 51 S.Ct. 532, 75 L.Ed. 1117.”
New York Times Co. v. Sullivan, supra (p. 270, 84 S.Ct. p. 721) :
“Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. See Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131; De Jonge v. Oregon, 299 U.S. 353, 365, 57 S.Ct. 255, 81 L.Ed. 278.”
New York Times Co. v. Sullivan, supra (p. 281, 84 S.Ct. p. 726) :
“It is of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrages. The importance to the state and to society of such discussions is so vast, and the advantages derived are so great, that they more than counterbalance the inconvenience of private persons whose conduct may be involved, and occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great. The public benefit from publicity is so great, and the chance of injury to private character so small, that such discussion must be privileged.” From Coleman v. MacLennan, 78 Kan. 711, 724, 98 P. 281, 286 (1908).