ERVIN, Justice
(dissenting):
We are concerned today with the constitutionality of Section 103.101(4), Florida Statutes, F.S.A., which provides:
“A candidate’s name shall be printed on the Florida presidential preference primary ballot unless he submits to the department of state by noon February IS in each year a presidential preference primary is held, an affidavit stating without qualification that he is not now, and does not presently intend to become a candidate for president at the upcoming nominating convention. If a candidate withdraws pursuant to this act, the department of state shall notify the state executive committee that the candidate’s name will not be placed on the ballot.”
The majority of this Court holds in this case that the section may constitutionally force potential presidential candidate Sam Yorty to elect one of only two alternatives, permitting his name to be placed on the Florida presidential preference primary ballot or swearing that he is not, and has no intention of becoming, a presidential candidate in the next election. I cannot agree with the majority’s conclusion upholding the validity of the section. It appears to me that the requirements of Section 103.101(4) must yield to the constitutional rights of Petitioner Yorty in the area of privacy and due process.
The section in effect forces potential nominees to become candidates in Florida. Such a position clearly impinges upon the personal and political rights of such persons. Candidacy imports campaigning, i.e., organization for the campaign, solicitation of votes, and expenditure of money and personal energy. A citizen has the right to refrain or refuse to take the arduous role of a political candidate despite a state legislative mandate to the contrary. Traditionally, candidates seeking their party’s nomination for president have selected those primaries in which they wished to run. Whether or not they appear on the ballot in a given state should be a matter of their volition, not the state’s.
To require Yorty to be a candidate for public office in competition with others against his will subjects him to the possibility of defeat, chagrin and humiliation, and possible loss of prestige, all of which may hurt his life career and damage his public stature. There are examples in history of political defeat affecting the physical and mental condition of candidates and hastening their deaths. Horace Greeley was so affected. Defeated candidates have suffered diminution of their prestige and personal effectiveness. Harold Stassen is an example.
Eight years ago this Court resolved the question of whether a citizen could be required to be a political candidate in this state against his will. Battaglia v. Adams, Fla.1964, 164 So.2d 195. Although Section 103.101 was not in effect at that time, the Battaglia holding regarding the constitutional right to privacy is directly on point and is clearly controlling in this case. Constitutional guaranties are imperatives that do not yield with the passing vagaries of statutes.
*151 The Battaglia facts are as follows: In 1964, Battaglia and others qualified as a slate of delegates to the Republican National Convention pledged to Richard Nixon. Nixon telegraphed the then Secretary of State, Tom Adams, to “take whatever action is appropriate under the law of Florida to keep my name from being entered on the Florida presidential primary ballot.” Adams refused to certify Nixon’s name for inclusion on the ballot and refused to add the names of the Battaglia group as an unpledged slate. Battaglia and the other potential Nixon delegates brought a mandamus action requesting this Court to direct Adams to place Nixon on the ballot or, in the alternative, to put their names on as an unpledged slate. This Court refused to do so, saying Nixon:
“has an absolute right to say whether or not his name shall be advanced as a candidate for president or any other office by the relators or any other group. An unauthorized use of a person’s name in this respect is recognized as a violation of his right of privacy. See State ex rel. LaFollette v. Hinkle, 131 Wash. 86, 229 P. 317, in which the court upheld the right of Mr. LaFollette to prohibit the use of his name by the so-called La-Follette State Party as their candidate for a state office. As pointed out by the court in the LaFollette case, nothing so exclusively belongs to a man or is so personal and valuable to him as his name, inasmuch as his reputation and the character he has built up are inseparably connected with it. See also 77 C.J.S. Right of Privacy § 5, p. 409; 41 Am.Jur. 940, Privacy, Sec. 20, and page 944, Section 24; and the cases collected in the annotation in 138 A.L.R. at page 22.
“The relators [Battaglia, et al.] recognize the applicability of the ‘right of privacy’ rule in this situation but argue that Mr. Nixon, by his governmental and political activities over the last several years and during the current presidential-election year, has 'waived any right of privacy in this area’ that he may have had. We do not agree. The fact that he may have consented to the use of his name in the Oregon primary, as stated by relators, does not mean that he has given a blanket consent to all comers, in whatever situation, to use his name in preferential primaries all over the Country. Mr. Nixon has unquestionably, as contended by relators, ‘by his accomplishments, fame, or mode of life * * * become a public personage, and he thereby relinquishes at least a part of his right of privacy.’ 41 Am.Jur., Privacy, p. 938, quoted in Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430; but this permissible ‘invasion’ of the right of privacy of one who has become a public personage relates to the dissemination of legitimate news items or other matters of public interest.” (Emphasis supplied.)
The similarities between Battaglia and the case sub judice are obvious. In each a political figure was engaged in activities indicating a desire on his part to be his party’s nominee for President of the United States. Both men requested, however, that their names not appear on the Florida primary ballot. The request was granted in Battaglia; it was denied in this case. Any distinctions which may be found in the two cases cannot justify the contrary conclusions. Under Battaglia v. Adams we must find Section 103.101(4), Florida Statutes, F.S.A. unconstitutional insofar as it forces a potential candidate to either run in the Florida presidential preference primary or swear he is not a candidate for the office of President of the United States.
To be constitutional, Section 103.101(4), Florida Statutes, F.S.A., must permit a potential candidate to remove his name from the Florida presidential preference primary ballot by submitting to the office of the Secretary of State a withdrawal affidavit stating merely that he does not wish to be included on the primary ballot. Such an affidavit would have to be received prior to the printing of the ballot to avoid con *152 fusion, disruption and undue expense. The statute could establish such a deadline, but, of course, it must be reasonable. See Beller v. Adams, Fla.1970, 235 So.2d 502.
The Secretary of State’s office has indicated in the record of this case that as of this week Yorty’s name could be deleted from the ballot because there is time enough to do so before the ballot has to be printed for the March 14th primary. His name should be removed.