302 So.2d 131 (1974)
Emil F. DANCIU, Appellant,
v.
Dorothy W. GLISSON, As Secretary of State of the State of Florida, Appellee.
No. 45982.
Supreme Court of Florida.
October 22, 1974.
Rehearing Denied November 12, 1974.
*132 Joseph C. Jacobs and Thomas M. Ervin, Jr., of Ervin, Varn, Jacobs & Odom, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., and John A. Barley, Asst. Atty. Gen., for appellee.
DEKLE, Justice.
This proceeding relates to the impending general election on November 5, 1974, and therefore has been given priority in argument and disposition. It is a direct appeal from a judgment of the Second Judicial Circuit of Leon County which upheld the constitutionality of F.S. § 99.152 as amended by Ch. 74-119, requiring an "independent" candidate for statewide office to submit and have certified upon petitions the signatures of 5% of the total registered electors of Florida as of the last general election, or sub judice 174,373 signatures (5% of 3,487,458 electors). Appellant suggests that this is more names than some major party nominees received votes in the immediate past primaries and is an unreasonable requirement which discriminates in violation of constitutional requirements of equal protection of the laws and due process and exceeds compelling State interest.[1] He also points out that only 3% of such registered electors is required *133 in a statewide elective office of minority party candidates under F.S. § 101.261 and therefore that it is an arbitrary discrimination.
Reasonable controls by the State (through the Legislature) must be provided in order to assure orderly and effective elections; provisions such as those in question are not unreasonable ones to this end. If any intended candidate who chose to do so were allowed to place his name upon the ballot without reasonable control and prerequisites, the ballot would reach such unruly proportions and length as to prevent intelligible and controllable ballots for the voters' choices.
The courts have consistently recognized that the states have a legitimate interest in keeping ballots within manageable limits. Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).
Appellant further argues unconstitutionality because of the substantial expense involved in gathering these names and the requirement of the statute to pay $.10 per name ($17,437 here) for the Supervisor of Elections to verify the signatures on the petitions. Sub judice this contention is moot, inasmuch as appellant has already indicated his intention to file the alternative affidavit of inability to make such payment which the statute allows. The same applies to the required qualifying fee which the statute also allows as an alternative the execution of an affidavit of inability to pay, and appellant has stated that such affidavit would be filed.
The suggestion that other states require lower percentages, in many instances only 1% of the registered voters,[2] may or may not be a more advisable requirement; this, however, is a legislative prerogative and such differences do not render the requirement in Florida an invalid one.[3] Five per cent in the Georgia statute was upheld in Jenness v. Fortson, supra, although appellant points out that there were not present in Jenness the proofs of costs and burden of obtaining so great a percentage which he has shown sub judice.
We have also examined the requirement of 5% for candidates seeking to qualify under F.S. § 99.095 by means of petition for nomination in a primary election. This, however, is an intra-party matter and falls equally on all party candidates so that it is not constitutionally impermissible.
We agree with appellant's contentions only in the respect that the difference between 5% and 3% between "minority party" candidates and "independent" candidates finds no reasonable relation or classification justifying a different percentage of registered electors and in this one respect we agree that no more than 3%, as required in the minority party statute § 101.261, must apply in lieu of the 5% set forth in F.S.A. § 99.152 for "independent" candidates. Unless there is a reasonable classification or valid basis for the difference in this requirement in order to be placed on the ballot, the arbitrary distinction cannot stand. We find none and therefore hold that the 3% otherwise provided applies to § 99.152. The other provisions of the challenged statute meet constitutional requirements of equal protection and due process of law and accordingly, with the modification to 3%, the judgment of the learned chancellor below is hereby
Affirmed.
*134 ADKINS, C.J., and ROBERTS and McCAIN, JJ., concur.
OVERTON, J., concurs specially with opinion.
OVERTON, Justice (concurring specially).
I agree that Section 99.152, Florida Statutes, which requires an individual to obtain signatures from five percent of the total registered electors at the last general election before his or her name may be placed on the ballot, is constitutional. The United States Supreme Court has held that five percent of the total registered electors is not an unreasonable percentage. Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).
I am of the opinion that there is a valid distinction between a "minority party" and an "independent candidate" and, therefore, the legislature is not constitutionally required to prescribe the same percentage for each classification. I would uphold the constitutionality of the statute, including the percentage of five percent of the electors as provided therein.
NOTES
[1] Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974).
[2] Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).
[3] Beller v. Adams, 235 So.2d 502 (Fla. 1970).