**Elizabeth KRUIDENIER et al., Appellants,**

**v.**

**W. E. McCULLOCH, Auditor of Polk County, Harold Hughes, Governor, et al., Appellees.**

**No. 52012.**

Supreme Court of Iowa.

April 9, 1968.

------♦------

David Belin, Des Moines, appears for plaintiffs-appellants.

Richard C. Turner, Atty. Gen., for applicants.

LeGRAND, Justice.

This opinion is supplemental to that filed in this cause on April 15, 1966, and published in 258 Iowa 1121, 142 N.W.2d 355. There we held the 1965 temporary reapportionment plan was unconstitutional under both the state and federal constitutions as contravening the requirement for substantially equal legislative representation for all citizens of the state—the one-man, one-vote principle. We also held this temporary plan should nevertheless be used until the Sixty-second General Assembly met in 1967 and had a reasonable opportunity to adopt a constitutionally acceptable plan.

In our original opinion we specifically retained jurisdiction to effect a constitutional apportionment plan if the legislature failed to do so.

The Sixty-second General Assembly enacted an apportionment law designated as House File 736, now chapter 105, Laws of the Sixty-second General Assembly. The attorney general, whose predecessor in office was one of the parties to this action originally, has filed his application asking us to pass upon the constitutionality of this law as it affects two subdistricts for the election of representatives from Johnson County. We consider his application under the retention of jurisdiction above mentioned.

At the outset we point out our original opinion dealt only with representation in Polk County, but we held the result reached there should apply to all multimember districts in the state. One of these is Johnson County and our expressions in that opinion apply to the situation now before us.

The Sixty-second General Assembly, after exhaustive study, adopted a plan of redistricting which appeared to meet the requirements of the one-man, one-vote principle. The basic concept of such rule is that all citizens of the state shall have substantially equal legislative representation. We have recognized, as has the Supreme Court of the United States, that mathematical equality is neither possible nor required, but substantial equality is.

I. We find the Sixty-second General Assembly made a diligent and good-faith effort to adopt a constitutionally acceptable plan. Under chapter 469, Laws of the Six-

ty-second General Assembly, a commission was established to conduct a study of legislative subdistricting and to make recommendations to the legislature. The commission made its report and its recommendations were adopted by the legislature in every instance except with reference to Johnson County. The commission recommended that Johnson County be subdivided into two districts, each of which should elect one representative to the general assembly. As proposed by the commission District 1 had a population of 26,320. District 2 had a population of 27,343. District 1 represented 48.89 percent of the total county population and District 2 represented 50.96 percent of that population. The deviation in population between these districts, which is obtained by dividing the population of the larger district by that of the smaller, was 1.0389. This substantially conformed to the deviation in all other multimember districts under the commission report. Instead of adopting the commission report, as it had done in every other instance, the legislature subdivided Johnson County into two districts, one of which has a population of 20,390 and the other 33,273. The smaller district comprises approximately 38 percent of the total county population and the larger approximately 62 percent. The deviation under this subdistricting is 1.6317.

We are told that this unfortunate result occurred by reason of a clerical error. The attorney general asks us to transpose in two places the directional courses in the description of the subdistricts which, he asserts, were erroneously stated, and as a result of which the bill as passed does not reflect the intention of the legislature. From the exhibits submitted to us and from the evidence introduced by the attorney general with our permission, it overwhelmingly appears that such a mistake occurred.

■ Ordinarily legislative mistakes, omissions and errors may be left to the legislature itself for correction. Not only is this desirable but in all except rare cases it is required by our traditional separation of powers. This is probably so well established that it needs no citation of authority. However, see 16 C.J.S. Constitutional Law § 104, p. 483; 16 Am.Jur.2d, Constitutional Law, section 210, page 449; Iowa-Illinois Gas and Electric Company v. Ft. Dodge, 248 Iowa 1201, 1216, 85 N.W.2d 28, 37. It is inimical to our system that one independent department of government should intermeddle with the affairs of another. Strangely enough the complaint usually made in this area is that courts are too ready to undertake such a task. Here, however, we are being importuned to do so.

Much of what we say here is based on the holding of the United States Supreme Court in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and cases there cited, and on our own pronouncements in the original opinion in this cause. It is unnecessary to review again the authorities set out and discussed there. However, we call attention to several statements, both from the Sims case and from our opinion of April 15, 1966, as being particularly important to our conclusion. All references to the Sims case are from 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d and those from our original Kruidenier opinion are from the Iowa Reports.

In the Sims case, 377 U.S. at page 562, 84 S.Ct. at page 1382, 12 L.Ed.2d at page 527 the Supreme Court said, "* * * If a State should provide that the votes of citizens in one part of the State should be given two times, or five times, or 10 times the weight of votes of citizens in another part of the State, it could hardly be contended that the right to vote of those residing in the disfavored areas had not been effectively diluted." Or again, 377 U.S. at page 568, 84 S.Ct. at page 1385, 12 L.Ed.2d at page 531, "The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all places as well as of all races." 377 U.S. at page 577, 84 S.Ct. at page 1390, 12 L.Ed.2d at page 536, appears this "* * * *We mean that the Equal Protection Clause requires that a state make an honest and good*

*faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable.* We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. *Mathematical exactness or precision is hardly a workable constitutional requirement.*" (Emphasis added.) As to correction of such imbalance the court said 377 U.S. at page 578, 84 S.Ct. at page 1390, 12 L.Ed.2d at page 537, "Lower courts can and assuredly will work out more concrete and specific standards for evaluating state legislative apportionment schemes *in the context of actual litigation.* For the present, we deem it expedient not to attempt to spell out any precise constitutional tests. * * * *Developing a body of doctrine on a case-by-case basis appears to us to provide the most satisfactory means of arriving at detailed constitutional requirements in the area of state legislative apportionment.*" (Emphasis added.) And 377 U.S. at page 586, 84 S.Ct. at page 1394, 12 L.Ed.2d at page 541, "And it [the District Court] correctly recognized that legislative reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."

We recognized and adopted many of these statements in our original Kruidenier opinion. Then, 258 Iowa at page 1144, 142 N. W.2d at page 369, we said, "The Iowa legislature must approach their assignment with the understanding they are to create districts for each legislative branch which are as nearly equal in population as is practicable. This is the basic concept. * * * We do not attempt to state in mathematical language the constitutionally permissible bounds of discretion in deviating from apportionment according to population. It is neither practicable nor desirable to establish rigid mathematical standards. Rather, the proper judicial approach is to ascertain

whether there has been a faithful adherence to a plan of population-based representation, with such minor deviations only as may occur in recognizing certain factors that are free from any taint of arbitrariness or discrimination."

Although these basic principles must be faithfully adhered to, both the Supreme Court of the United States and this court recognize certain practical situations must be met. 377 U.S. at page 585, 84 S.Ct. at page 1393, 12 L.Ed.2d at page 541, of the Sims case the court held, "It is enough to say now that, once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. *In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general and equitable principles.* With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree." (Emphasis added.)

II. These views are appropriate here. The matter before us is urgent. The make-up of the Sixty-third General Assembly will be determined at the general election in November of this year. The whole election machinery is immobilized until this uncertainty is resolved. It cannot await the next legislative session, without running the

grave risk that the representatives from Johnson County, certainly, and those of the entire state, possibly, will later be held to have been improperly elected.

It is suggested we change the wording of section 22, chapter 105, Laws of the Sixty-second General Assembly by reversing the two directional courses where they are claimed to be erroneous. This, we are told, will conform the plan to the intention of the legislature and will not constitute judicial legislation. In support thereof we are referred to In re Petersen's Will, 186 Iowa 75, 172 N.W. 206. There is some dictum in that decision tending to support the position of the attorney general, although we find nothing there to persuade us to honor his request. That case turned on a question of grammatical construction rather than substitution of words. It has no factual similarity to our present problem. There is some authority, however, from other jurisdictions for what we are asked to do here. There is also a considerable contrary view. The matter is by no means one of unanimity. We see no necessity for discussing it at length, but we refer to Volume 2, Sutherland, Statutory Construction (Third Ed.) (Horak), sections 4924, 4925, 4926, pages 452–466. Precedent is there listed for judicial alteration of legislative enactments to remedy such errors as "mistake, accident or clerical error"; to avoid "absurb, meaningless, irrational or unreasonable results"; to accomplish "clear legislative intent"; to supply "omissions where necessary to prevent unconstitutionality." Substitution of one word for another has been permitted where necessary "to carry out legislative intent" or "to make the act harmonious or to avoid repugnancy or inconsistency" or where it is obvious that the word used is the "result of clerical error or mistake." On the other hand some courts have been extremely reluctant to interfere judicially with legislative pronouncements. They refuse to "venture upon the dangerous path of judicial legislation to supply omissions or remedy defects in matters committed to a coordinate branch of the government. It is far

better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers." Some courts deny the power under any circumstances because it is the exercise of a purely legislative authority.

III. This precise matter has never been decided by us. We need not determine here whether such authority exists although we can safely subscribe to the principle that, if it does, it should be practiced with extreme caution and great reluctance. The specter of abuses resulting from a judiciary too quick to intervene for the correction of legislative ambiguities, mistakes, errors and omissions is too obvious to require extended discussion. The evils resulting therefrom would be far greater than those which such action was designed to prevent.

■ We do not base our decision here upon any such judicial power nor need we do so. The purpose of retaining jurisdiction in this cause was to make certain any plan of apportionment adopted by the Sixty-second General Assembly met the constitutional standards we set out therein. From whatever cause, chapter 105 fails to do so. We need not be concerned whether this resulted from mistake or otherwise. As far as the multimember district for Johnson County is concerned, section 22 is unconstitutional because it does not give to all citizens equally substantially the same legislative representation. The formula violates our directive in the first Kruidenier opinion and falls directly within the purpose for which jurisdiction was retained.

Although time is running out, we may still remedy this imbalance without a "disruption of the election process." Therefore we should not deprive the voters of Johnson County of their right to "substantially equal legislative representation." Unless we grant equitable relief, no other course is open to these citizens before the next legislative session. We have the power to pre-

scribe an interim procedure which will be constitutionally correct and which will be effective only until the next General Assembly has had an opportunity to enact legislation concerning the matter. This is the course recommended in Sims, and it is one which we adopted by retaining jurisdiction over this cause when it was first submitted.

We now hold section 22, chapter 105 of the Laws of the Sixty-second General Assembly is unconstitutional as it applies to Johnson County because the two subdistricts fail to meet the standards of the one-man, one-vote principle and because it grants to certain residents of those subdistricts legislative representation disproportionate to that of other residents of the state.

Under the jurisdiction retained by us, we strike down section 22, chapter 105, Laws of the Sixty-second General Assembly and provide instead:

The county of Johnson shall constitute one (1) representative district and shall be subdivided into the two (2) following representative subdistricts and each subdistrict shall elect one (1) representative:

a. Subdistrict one (1) shall constitute the following portions of Johnson county which include the townships of Big Grove, Cedar, Newport, Graham, East Lucas, Scott, Pleasant Valley, Lincoln, and Fremont as the townships existed in 1960, and that part of the city of Iowa City described as follows:

Beginning at the intersection of Iowa avenue and the center line of the Iowa river; thence east along the center line of Iowa avenue to the center line of Madison street; thence south along the center line of Madison street to the center line of Washington street; thence east along the center line of Washington street to the center line of South Linn street; thence north along the center line of South and North Linn street to the center line of Bloomington street; thence east along Bloomington street to the center

line of North Van Buren street; thence north along the center line and the projected center line of North Van Buren street to the 1960 corporate limits of the city of Iowa City; thence westerly, thence southerly, and thence easterly along the 1960 corporate limits of the city of Iowa City to the cetner line of the Iowa river; thence northerly along the center line of the Iowa river to the center line of Iowa avenue, the point of beginning.

b. Subdistrict two (2) shall constitute the following portions of Johnson county which include the townships of Monroe, Jefferson, Oxford, Madison, Penn, Clear Creek, Hardin, Union, West Lucas, Washington, Sharon, and Liberty as the townships existed in 1960, and that part of the city of Iowa City described as follows:

Beginning at the intersection of Iowa avenue and the center line of the Iowa river; thence southerly along the center line of the Iowa river to the 1960 corporate limits of the city of Iowa City; thence easterly, thence northerly, and thence westerly along the 1960 corporate limits of the city of Iowa City to the projected center line of North Van Buren street; thence south along the projected center line and the center line of North Van Buren street to the center line of Bloomington street, thence west along the center line of Bloomington street to the center line of North Linn street; thence south along the center line of North and South Linn street to the center line of Washington street; thence west along Washington street to the center line of Madison street; thence north along the center line of Madison street to the center line of Iowa avenue; thence west along the center line of Iowa avenue to the center line of the Iowa river, the point of beginning.

This is the plan recommended by the legislative subdistricting commission and the one which the legislature apparently

thought it was adopting. We find it meets constitutional one-man, one-vote requirements, although other plans might also do so. We have not meant to fix rigid standards to be used as a formula in other cases. What we have said here is limited to the particular facts now before us. It is intended, further, to apply only to the 1968 general election for choosing representatives to the Sixty-third General Assembly and any special election to fill vacancies therein.

The clerk of this court is hereby directed to certify and transmit forthwith a copy of this opinion to the Secretary of State who shall immediately take all necessary and proper steps to insure the nomination and election of representatives to the Sixty-third General Assembly from Johnson County as provided herein.

It is so ordered.

All Justices concur.