DEKLE, Justice.
We have consented to advance this cause as requested under Fla. Const, art. V, § 4(2), F.S.A., and Fla.App.R. 3.12, 32 F.S.A. We also dispense with oral argument and further briefs and record in the circumstances. F.A.R. 3.10, subd. e.
We are now presented with the reverse contention of that which was just before the Court in Yorty v. Stone, Florida Supreme Court Case No. 42,045 filed *493 February 22, 1972, 259 So.2d 146. Appellant seeks to compel appellees to place his name on the March 14, 1972, presidential preference primary ballot under new Fla. Stat. § 103.101, F.S.A., as amended by Ch. 71-236, Laws of Florida (1971).[1] The *494 Selection Committee (appellees) did not find that Mr. Quinn fell in that category provided under the statute as a presidential candidate “generally advocated or recognized in news media throughout the United States or in the state.” [2]
*493 [emphasis ours]
“(4) A candidate’s name shall be printed on the Florida presidential preference primary ballot unless he submits to the department of state by noon February 15 in each year a presidential preference primary is held, an affidavit stating without qualification that he is not now, and does not presently intend to become a candidate for president at the upcoming nominating convention. If a candidate withdraws pursuant to this act, the department of state shall notify the state executive committee that the candidate’s name will not be placed on the, ballot.
“ (5) The names of candidates for political party nominations for president of the United States shall be printed on official ballots for the presidential preference primary elections and shall be marked, counted, canvassed, returned, and proclaimed in the same manner and under the same conditions, so far as the same are applicable, as are other state elections.”
*494 One of the great blessings of this nation and of course one of the recognized Four Freedoms is a Free Press which we enjoy, so that a potential candidate certainly has a reasonable opportunity to project himself and to make himself known as a recognized contender to qualify under the designation in the statute which he attacks. It is widely known through news releases in all media over the state that the Honorable Richard “Dick” Stone, Florida Secretary of State, as Chairman of this Committee, held public consultations with the news media and others and of course with his committee members to determine the names of any persons who fell within the statutory category. There is no factual showing that the able Secretary and Committee acted arbitrarily or capriciously in not including the name of plaintiff as a recognized candidate. Appellant has no guaranteed personal right to inject himself into a primary election by arbitrarily having his name entered upon the ballot, absent a showing of qualification under law to be there. His suit filed in Leon County, Circuit Court in essence challenges the statute’s constitutionality vel non and in its application to appellant, giving this Court jurisdiction for review. Fla.Const, art. V, § 4(2).
The learned chancellor found from the evidence in the trial court that under the statute’s mandate to prepare the list of names of presidential candidates for the primary ballot, the Secretary established and followed reasonable procedures in the performance of that duty. In what must be its very earliest citation as precedent, the chancellor in his declaratory decree also cited as authority for denial of appellant’s contention, our opinion just released in Yorty v. Stone, Opinion filed February 22, 1972, 259 So.2d 146. He quoted from that opinion the following language which now appears to have been almost prophetic of the contention here:
“The people also have a right to an orderly election. There may be a reasonable provision to keep the ballot free of unwarranted and meaningless names submitted which are not in serious contention and which would only burden the ballot and detract from those candidates who are in serious contention on the national or state levels. This control is sought to be provided by the terms of the statute.
“The statute is a valid exercise of the police power of the state by the Legislature, in whom that power reposes. It is applied equally to all candidates for the presidency and each stands on the same footing, so that there is no denial of equal protection and due process under the Florida and United States Constitutions. . . .”
This statute deals in the political arena. The Legislature in the exercise of the police power of the state very appropriately vested this discretion in a Committee whose members are probably the most representative group of leaders and officials of the two major political parties in Florida that could be chosen. By virtue of their positions they are knowledgeable and abreast of ongoing events and persons involved in the choice of political candidates within their respective parties. They are particularly suited to make the decision as to who are the recognized contenders for the nominations of each party under the criteria set forth in the statute. In this, a primary election, it is a matter of each political party putting forth its best effort to select its very best candidate and therefore a recognized one who would be likely to find the favor of the voters of this nation. In politics as in other great American sports the “name of the game” is winning. The manner wisely, perhaps ingeniously, chosen by the gov *495 erning legislative body made up of members of these political parties to effectuate this high purpose appears to be a very fair and effective formula for the selection of candidates from among whom their party members as voters may choose.
Although the Secretary submits the initial list of potential presidential candidates under the provisions of the statute, any single member of the Committee of the same political party as a prospective candidate may add to the list one who qualifies. Provision is made for such request by a potential candidate in writing, with these requests to be specifically considered upon a convening of the Committee and: “If any member of the selection committee of the same political party as the candidate requests that such candidate’s name be placed on the ballot, the committee shall direct the department of state to place the candidate’s name on the ballot.” Fla.Stat. § 103.101(3) (b), F.S.A. It only takes one member of his political party on the Committee to assure that he appears. It would be difficult to contend that this is unreasonable. No abuse of discretion or improper exercise of delegated authority has been shown.
The elective process could be completely frustrated without some reasonable control of the ballot. To place names on a ballot solely on demand or without some reasonable basis for candidacy could easily result in such a lengthy and confused ballot that not only would an intelligent vote be difficult and the mechanical process of submitting and tallying the ballot almost impracticable, but the voter would be discouraged from participating at all in such a difficult and time consuming effort. We are unfortunately experiencing in this free nation in some areas a smaller participation by the voting public in its elective process which is the bedrock of democracy.[3] Without it the democratic process in our representative form of government fails. There are more and more elections (and primaries) requiring the voters’ time and study. Every encouragement consistent with due process should be given to make it easy to vote, to impress the voter with the fact that his or her vote is effective in that election, lest he become discouraged in the conscientious effort he wants to make if only he knows that it is worthwhile and if the issue is made clear. These are important factors undergirding reasonable safeguards and provisions in the elective process. The very constitutional concept is dependent upon it, so that such a reasonable statutory provision of control and regulation as is provided in Fla. Stat. § 103.101, F.S.A., can hardly be an unconstitutional invasion of rights; it is instead a preservation of those sacred rights.
The able chancellor correctly delineated the issues and properly held Chapter 71-236, Laws of Florida, amending Fla.Stat. § 103.101, F.S.A., to be valid and constitutional and not in violation of either the Florida or United States Constitutions, the equal protection provisions thereof and that there was no unconstitutional invasion of privacy and no violation of freedom of speech, all as contended by appellant.
Petitions for rehearing are hereby dispensed with in view of the emergency nature of this appeal and the time factor involved.
Affirmed.
*496 ROBERTS, C. J., and CARLTON and McCAIN, JJ., concur.
ERVIN, J., concurs specially with opinion.

. “PRESIDENTIAL ELECTORS: POLITICAL PARTIES; COMMITTEES
“E.S. 103.101 Presidential preference primary.—
“(1) This act shall be known and may be cited as the Florida presidential preference primary law.
“(2) Each political party which had east for its candidate for president and vice-president in the last election more than ten percent (10%) of the total vote cast for president and vice-president in the state, and with which ten percent (10%) of the total registered electors have registered by February 1, of each general election year, shall elect on the second Tuesday in March in 1972, and on the second Tuesday in March every four (4) years thereafter, one person to be the candidate for nomination by his party for president of the United States. Each elector of such party may vote his preference for one (1) person to be the candidate for nomination by his party for president.
“(3) The name of any candidate for a political party nomination for ■ president of the United States shall be printed on the ballots:
“(a) Upon the direction of a presidential candidate selection committee composed of a non-voting chairman who shall be the secretary of state, the speaker of the house of representatives, the president of the senate, the minority leaders of both the house and senate, and the chairmen of political parties required to have a presidential preference primax-y under this act, or their respective designees. The secretary of state, during the second week in January each year a presidential preference primary is held, shall prepare and publish a list of names of presidential candidates who are generally advocated or recognized in news media throughout the United States or in the state. The secretary of state shall submit such list of names of pi-esidential candidates to the selection committee during the second week in January each year a presidential preference primary election is held. Each person designated by the secretary of state as a presidential candidate shall appear on the presidential preference primary ballot unless all committee members of the same political party as the candidate agree to delete such candidate’s name from the ballot. The selection committee shall meet in Tallahassee during the third week in January each year a presidential preference primary is held, on a date publicly announced by the chairman. The selection committee shall publicly announce and submit the names of px-esidential candidates who shall appear on the presidential primary ballot to the department of state no later than January 20 each year a presidential preference primary election is held. Not later than February 1, the department of state shall notify each presidential candidate designated by the committee. Such notification shall be in wi-iting by registered mail with return receipt requested.
“(b) Any presidential candidate whose name is not selected by the secretary of state or whose name is deleted by the selection committee may request in writing to the chairman of the selection committee prior to February 10 each year a presidential pi-eference primary election is held, that his name be placed on the ballot. Not earlier than Febx-uary 10, nor later than February 15, the secretary of state shall convene the committee to consider such requests. If any member of the selection committee of the same political party as the candidate requests that such candidate’s name be placed on the ballot, the committee shall direct the department of state to place the candidate’s name on the ballot. Within five (5) days after such meeting, the department of state shall notify the presidential candidate that his name will appear on the ballot.

. Id.

. In the Sept. 8, 1970, primary election in Florida only 40.8% of those eligible went to the polls. In the 1970 national election less than 50% of those eligible cast a ballot on a national level; in Florida 62% (better than the 50% average of all state elections). Over 90% vote in other Democratic countries around the world, in Belgium, Italy, the Netherlands, Sweden, Norway, Ireland, France, etc. (Sunday elections.)