**James M. REDMOND, Petitioner,**

v.

**Hon. James H. CARTER et al., Respondents,**

**State of Iowa ex rel. Richard C. Turner, Attorney General, Intervenor.**

**No. 59949.**

Supreme Court of Iowa.

Nov. 23, 1976.

Rehearings Denied Jan. 14, Feb. 10, 1977.

James M. Redmond pro se.

Richard C. Turner, Atty. Gen., for intervenor.

Eugene Davis, David J. Grace, John K. Vernon and Paul E. Horvath of Davis, Scott & Grace, Des Moines, for respondents Carter, Allbee and Oxberger.

Harry Druker and John B. Grier of Cartwright, Druker & Ryden, Marshalltown, for respondents Donielson and Snell.

McCORMICK, Justice.

We accepted original jurisdiction of this case under our supervisory power in order to decide whether district court judges are eligible for appointment to the Iowa Court of Appeals. We hold they are eligible for such appointment and accordingly dismiss

the petition for supervisory review and petition of intervention.

The Iowa Court of Appeals is an intermediate appellate court created by Acts 66 G.A., S.F. 1092, effective July 1, 1976. The supreme court, like the district court, has always been provided for in the Iowa Constitution. However, the legislature has always been empowered to create additional courts below the level of the supreme court. Ia.Const. art. V, § 1.

From 1857 until 1962 the Constitution provided that a district court judge " * * shall be ineligible to any other office, except that of Judge of the Supreme Court, during the term for which he was elected." Ia.Const. art. V, § 5 (1857). In 1962 the people of Iowa adopted an amendment to the Constitution establishing a nonpartisan merit system of judicial selection and tenure. The amendment repealed art. V, § 5, and included the following language regarding eligibility of district court judges to hold other office:

"Judges of the Supreme Court and District Court shall be ineligible to any other office of the state while serving on said court and for two years thereafter, except that District Judges shall be eligible to the office of Supreme Court Judge." Ia.Const. art. V, § 18.

The amendment added:

"Other judicial officers shall be selected in such manner and shall have such tenure, compensation and other qualification as may be fixed by law."

The legislation creating the court of appeals provides that appointees to the court of appeals must satisfy the same requirements as judges of the supreme court. Acts 66 G.A., S.F. 1092, § 14. Statutory qualifications for the supreme court and district court are prescribed in § 46.14, The Code:

"Such nominees shall be chosen by the affirmative vote of a majority of the full statutory number of commissioners upon the basis of their qualifications and without regard to political affiliation. Nominees shall be members of the bar of Iowa, shall be residents of the state or district of the court to which they are nominated, and shall be of such age that they will be able to serve an initial and one regular term of office to which they are nominated before reaching the age of seventy-two years. No person shall be eligible for nomination by a commission as judge during the term for which he was elected or appointed to that commission."

Respondents James H. Carter, Robert G. Allbee and Leo Oxberger were among 15 persons nominated to fill the five initial positions on the court of appeals, and they were among the five persons appointed to the court by the Governor. At the time of their nomination and appointment they were district court judges. Respondents Allen Donielson and Bruce M. Snell, Jr. were the other two persons appointed to the court of appeals from the list of nominees.

No question is raised regarding the statutory eligibility of respondents to receive their appointments. Rather, petitioner, who is a taxpayer and state senator, and intervenor State of Iowa challenge the eligibility of respondents Carter, Allbee and Oxberger under art. V, § 18, of the amended Constitution. Petitioner also contends the ineligibility of these respondents has the effect of invalidating the appointments of respondents Donielson and Snell, but intervenor does not share that view.

The determinative question is whether art. V, § 18, must be construed and applied to make district court judges ineligible for appointment to the court of appeals until two years after they leave the district court.

The arguments of the parties on this question fall along two principal lines. One relates to ascertainment of the intent of the framers of the provision. Petitioner and intervenor insist that its meaning is evident from the language used and that such language plainly makes district court judges ineligible for appointment to the court of appeals until two years after they leave the district court. Respondents Carter, Allbee and Oxberger insist that a reasonable and practical construction of the provision, in

light of its evident and demonstrable purpose, precludes its application to deny district court judges the right of appointment to higher state judicial office.

The second line of argument relates to allegations by respondents Carter, Allbee and Oxberger that the construction and application of the provision urged by petitioner and intervenor would deprive them of rights assured under the United States Constitution, including their right to equal protection of the law under the fourteenth amendment. Petitioner and intervenor deny that any such deprivation would occur.

Because we find the question is answered by examination and resolution of the parties' second line of argument, we do not reach the first. Instead, we assume for purposes of this decision that petitioner and intervenor are correct in their construction of Ia.Const. art. V, § 18, and we hold that the rights of district judges as a class under the equal protection clause of the fourteenth amendment to the United States Constitution would be infringed by application of that provision to make them ineligible for appointment to the court of appeals.

Federal constitutional provisions have been held in a number of cases in various circumstances to bar enforcement of state constitutional or statutory restrictions on eligibility for public office. *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Stockton v. McFarland*, 56 Ariz. 138, 106 P.2d 328 (1940); *Fort v. Civil Service Com'n of County of Alameda*, 61 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (1964); *State v. Superior Court of Marion County, Inc.*, 238 Ind. 421, 151 N.E.2d 508 (1958); *Riley v. Cordell*, 200 Okl. 390, 194 P.2d 857 (1948); *Minielly v. State*, 242 Or. 490, 411 P.2d 69 (1966); *Beasley v. Cunningham*, 171 Tenn. 334, 103 S.W.2d 18 (1937); *State v. Zimmerman*, 249 Wis. 237, 24 N.W.2d 504 (1946). Restrictions have been held to meet federal constitutional standards in other circumstances in other cases. See *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); *Quinn v. Stone*, 259 So.2d 492 (Fla.1972); *Johnson v. State, Civil Service Department*, 280 Minn. 61, 157 N.W.2d 747 (1968); *State ex rel. Gralike v. Walsh*, 483 S.W.2d 70 (Mo.1972). See, generally, Annot., 28 A.L.R.3d 717.

■ The fourteenth amendment provides in relevant part that no state shall "deny to any person within its jurisdiction the equal protection of the laws." A state cannot evade this provision any more by its constitution than by legislation. *Turner v. Fouche*, supra.

■ The equal protection clause proscribes state action which irrationally discriminates among persons. *Brightman v. Civil Serv. Com'n. of City of Des Moines*, 204 N.W.2d 588, 591 (Iowa 1973). We recognize that it is often necessary for the state to divide persons into classes for legitimate state purposes, but the distinction drawn between classes must not be arbitrary or unreasonable. The classification must be based upon some apparent difference in situation or circumstances of the subjects placed within the one class or the other which establishes the necessity or propriety of discrimination between them. Such discrimination is unreasonable if the classification lacks a rational relationship to a legitimate state purpose. *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972). Traditional analysis is applied to equal protection challenges involving ordinary restrictions on eligibility for public office. *Bullock v. Carter*, 405 U.S. 134, 142–143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92, 99 (1972).

■ Accordingly, if a classification is employed in establishing qualifications for public office, it must be based on a real and substantial difference having a reasonable relation to a legitimate object of government. *Landes v. Town of North Hempstead*, 20 N.Y.2d 417, 420, 284 N.Y.S.2d 441, 231 N.E.2d 120, 121 (1967). However, under this standard a classification does not deny equal protection simply because in practice it results in some inequality. Practical problems of government permit rough accommodations, and the classification will

be upheld if any state of facts reasonably can be conceived to justify it. *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973).

■■ The construction of Ia.Const. art. V, § 18, advocated by petitioner and intervenor has the effect of making district court judges ineligible as a class for appointment to the court of appeals until two years after they leave the district court. All other lawyers meeting the statutory requirements, including judicial officers such as part-time magistrates, full-time magistrates and district associate judges, would comprise the class of persons eligible for appointment to the court of appeals. At the same time, district judges join that group to make up the class of persons eligible for the state's highest court. Neither petitioner nor intervenor contends that the framers of art. V, § 18, intended to make any such classification. Yet, in defending their construction of the constitutional provision, petitioner argues that the classification is as unavoidable as it is absurd. This argument ignores the effect of the fourteenth amendment. A classification which is absurd cannot be sustained against an equal protection challenge; if it is absurd, it is avoidable.

Petitioner and intervenor have not suggested any state of facts which reasonably can justify exclusion of district court judges from the class of persons eligible for the court of appeals while including them among those eligible for the state's highest court, and we have found none.

Intervenor acknowledges that provisions like art. V, § 18, "are supposed to promote separation of governmental power, help remove judges from politics and inhibit trafficking in public office," citing *State ex rel. Childs v. Sutton*, 63 Minn. 147, 65 N.W. 262 (1895), and *State ex rel. Reynolds v. Howell*, 70 Wash. 467, 126 P. 954 (1912). But intervenor does not suggest how such purposes are rationally served by the classification at issue here. The court of appeals is part of the judicial department; therefore exclusion of district judges from the class of persons eligible for appointment to the court of appeals does not promote the separation of powers. The district court and court of appeals are both nonpartisan; hence such exclusion does not serve the goal of nonpartisanship. Judges are selected for the court of appeals through a nonpartisan merit system, which intervenor acknowledges properly makes district judges and other judicial officers eligible for the supreme court; thus the exclusion does not advance the goal of inhibiting trafficking in public office either.

■ Petitioner and intervenor rely heavily on the principle that a person does not have a constitutional right to public employment. However, that is not the issue. The issue is whether the state can arbitrarily regulate public employment. It is well settled that, "To state that a person does not have a constitutional right to government employment is only to say that he must comply with reasonable, lawful, and nondiscriminatory terms laid down by proper authorities." *Slochower v. Board of Higher Education of New York City*, 350 U.S. 551, 555, 76 S.Ct. 637, 639, 100 L.Ed. 692, 699 (1956).

The same principle was applied in *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), a case in which the United States Supreme Court sustained an equal protection challenge to a Georgia constitutional provision conditioning eligibility for appointment to a county school board on freeholder status. The Court said:

"We may assume that the appellants have no right to be appointed to the Taliaferro County board of education. But the appellants and members of their class do have a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications. The State may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees." 396 U.S. at 362–363, 90 S.Ct. at 541, 24 L.Ed.2d at 580.

The same situation exists here. The legislature created the intermediate court in the

exercise of power delegated to it by Ia. Const. art. V, § 1. Having established the judicial offices involved, the State may not deny district court judges the privilege of holding such offices on the basis of invidiously discriminatory distinctions.

In an apparent effort to defeat application of this principle, intervenor alleges that consideration of the absurdity of the classification making district judges ineligible for the court of appeals is precluded by the fact the court was created subsequent to the 1962 amendment adding art. V, § 18, to the Iowa Constitution. Intervenor argues that a state constitutional provision which is not invalid under the federal constitution when adopted cannot be made invalid by a subsequent act of the legislature. Intervenor suggests that if there is a choice between sustaining art. V, § 18, and the statute creating the court of appeals, the statute must fall. But, without citation of authority, intervenor then invites us to ignore the equal protection clause and save the court of appeals by holding art. V, § 18, makes district judges ineligible for appointment to it. Of course, if we agreed with the rest of intervenor's analysis, we could not disregard the equal protection clause. Giving it effect and carrying intervenor's argument to its logical conclusion, art. V, § 18, as construed by intervenor would nullify the legislature's undisputed power under art. V, § 1, to establish an intermediate appellate court.

However, we do not agree with intervenor's analysis. The principle that a state constitutional provision which is not invalid under the federal constitution when adopted cannot be made invalid by a subsequent act of the legislature is a bar only to legislation which purports to invalidate a state constitutional provision on its face or in previously constitutional applications. It does not bar legislation resulting in new circumstances to which the state constitutional provision may not validly extend. This limitation of the principle is implicit in the cases relied on by intervenor. See *Beveridge v. Lewis*, 137 Cal. 619, 70 P. 1083 (1902); *Hanover Fire Ins. Co. v. Harding*, 327 Ill. 590, 158 N.E. 849 (1927).

■ The conformance of a state constitutional provision with the federal constitution is not fixed forever in every possible application by conditions existing when it was adopted. A constitutional provision does not stop the clock. Moreover, a provision of law which is constitutional when applied in one situation may be unconstitutional when applied in another. *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 462, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725, 1734 (1945).

As a result, a classification which does not deny equal protection in one set of circumstances may do so when circumstances change. *Chicago & N. W. Ry. Co. v. Fachman*, 255 Iowa 989, 998, 125 N.W.2d 210, 215 (1963); see *Chastleton Corp. v. Sinclair*, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed.2d 841 (1924); *Vigeant v. Postal Telegraph Cable Co.*, 260 Mass. 335, 157 N.E. 651 (1927). This is one reason courts will ordinarily avoid formulating a rule of constitutional law broader than required by the precise facts in which it is to be applied. *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

Petitioner and intervenor do not question the authority of the legislature to establish an intermediate court under Ia.Const. art. V, § 1. When the legislature exercised that authority, it did not purport to affect the conformance of art. V, § 18, with the equal protection clause of the federal constitution either on its face or in previous applications. It simply created new circumstances. Intervenor has failed to distinguish between a statute which creates new circumstances for application of an old constitutional provision and a statute which purports to modify such a prior constitutional provision. The classification challenged by respondents Carter, Allbee and Oxberger arises from the construction of art. V, § 18, urged by petitioner and intervenor in the new circumstances and not from the statute. The question for us is whether the equal protection clause bars application of the state constitutional provision in these new circumstances.

District judges in 1962 had the same rights under the equal protection clause of the fourteenth amendment as they do now. Art. V, § 18, cannot be applied now to infringe those rights. The fact that the problem would not exist if circumstances had not been changed by creation of the court of appeals does not diminish the federal constitutional rights of district court judges. Nor does holding they are eligible to sit on the court of appeals enlarge those rights; it simply recognizes them and applies them in new circumstances. The effect of sustaining the equal protection challenge is not to strike the state constitutional provision or to invalidate it in previous applications, but to make it inapplicable to the situation here because of the overriding assurances of the equal protection clause.

Art. V, § 18, as construed by petitioner and intervenor, cannot withstand equal protection analysis in its present application. It burdens district court judges with an invidiously discriminatory disqualification. We hold that this provision cannot be applied to bar district judges from appointment to the court of appeals because to do so would infringe the rights of district judges as a class to equal protection of the law.

We do not decide the constitutionality of art. V, § 18, in any other application.

We hold that respondents Carter, Allbee and Oxberger are not made ineligible by Ia.Const. art. V, § 18, for appointment to the Iowa Court of Appeals. Therefore, we reject plaintiff's challenge to the validity of the appointment of all respondents. We need not and do not decide whether if the district judges were ineligible the appointments of respondents Donielson and Snell would have been invalid.

The petition for supervisory review and petition of intervention are accordingly dismissed.

Costs are taxed to intervenor.

All Justices concur except LeGRAND, MASON and HARRIS, JJ., who concur specially and REES, J., who takes no part.

LeGRAND, Justice (concurring specially).

Although I agree with the conclusion reached by the majority, I do not agree our decision should rest on a federal constitutional conflict. I therefore concur only in the result.

The majority correctly points out the respondent judges urge two grounds to sustain the validity of their appointment to office. First, they say a reasonable and proper interpretation of the Iowa Constitution supports them. Secondly, they claim any other result would violate the equal protection clause under the 14th Amendment to the Federal Constitution.

The majority bases its decision on the second ground and asserts it is therefore unnecessary to reach the first. I would reverse this process. I say the appointments should be validated on the first ground and that the second should not be considered.

The particular constitutional provision at issue is repeated here for convenience:

"Judges of the Supreme Court and district court shall receive salaries from the state, shall be members of the bar of the state, and shall have such other qualifications as may be prescribed by law. Judges of the Supreme Court and District Court shall be ineligible to any other office of the state while serving on said court and for two years thereafter, except that District Judges shall be eligible to the office of Supreme Court Judge. Other judicial officers shall be selected in such manner and shall have such tenure, compensation and other qualification as may be fixed by law * * *." (Iowa Constitution, Art. V, § 18.)

Three of the five persons appointed to the newly-created court of appeals were then district judges. Petitioner challenges their right to qualify because of the constitutional provision just set out. He is joined in this contention by the Attorney General, who intervened in the cause.

Both the petitioner and the intervenor concede the result for which they argue is absurd and was unintended by the constitu-

tional amendment in question. Yet they say that result is unavoidable because of the clear, explicit and unambiguous language of the amendment.

The majority rests its case partially on the conclusion an absurd result must necessarily offend against the 14th Amendment equal protection clause. This suggests the Federal Constitution will not tolerate absurdity, but that we are impotent to avoid similar consequences under our own Constitution. I reject that view. This problem may—and should—be resolved under *our* Constitution. We need not wring our hands in despair and look elsewhere for succor. Any other conclusion is itself absurd.

Before discussing why I say we should not give the constitutional language the literal interpretation petitioner and intervenor urge, I briefly relate the background facts. When the constitutional amendment in question was adopted in 1962, Iowa was served by only one appellate court—the Supreme Court. There was no court of appeals, and none was then contemplated. Under facts submitted by affidavit (which are not challenged by petitioner or intervenor), it is clear the purpose of the 1962 amendment was to remove judges from the political fray by limiting their state service to the judiciary, either as trial or appellate judges. This was accomplished by specifying they could serve only in the two judicial positions then existing. (For present purposes I disregard lesser judicial positions.) Both petitioner and intervenor concede, either explicitly or tacitly, that the intent was *not* to limit the service of district judges within the judicial department. They admit, too, either expressly or tacitly, that the result for which they so vigorously contend creates a strange and inexplicable anomaly.

Must we, then, adopt the literal language which defeats the purpose of the amendment? That, of course, is the ultimate decision to be made.

Constitutional provisions are construed under the same general principles which govern statutory construction, with due regard for the different purposes they serve. Unlike statutes, constitutions set out broad general principles. A constitution is a living and vital instrument. Its very purpose is to endure for a long time and to meet conditions neither contemplated nor foreseeable at the time of its adoption. *Bechtel v. City of Des Moines, et al.*, 225 N.W.2d 326, 332 (Iowa 1975).

The polestar of *all* interpretation is the intention with which the instrument is drawn. 16 C.J.S. Constitutional Law § 16 at p. 72 (1956); 16 Am.Jur.2d Constitutional Law § 64 at 239 (1964). Of equal importance is a determination of the purpose to be served. 16 Am.Jur.2d Constitutional Law § 65 at 241 (1964). Sometimes the literal language must be disregarded because it does violence to the meaning and intent of the enactment.

In 16 Am.Jur.2d Constitutional Law § 76 at 258 (1964), the principle is stated this way:

"In accordance with the basic rules that language in a constitution is to be deemed to have been used therein in its ordinary sense, and that a constitution is to be liberally construed, the principle has been developed that in framing a constitution, words are employed in a comprehensive sense as expressive of general ideas rather than of finer shades of thought or of narrow distinctions, and ordinarily words in an instrument like the United States Constitution do not have a narrow, contracted meaning, but are presumed to have been used in a broad sense, with a view of covering all contingencies. Where words are used which have both a restricted and a general meaning, the general must prevail over the restricted unless the nature of the subject matter of the context clearly indicates that the limited sense is intended. Stated differently, the rule is that no forced, unnatural, narrow, or technical construction should ever be placed upon the language of a constitution. * * * "

A number of courts have considered problems like that which this case raises.

In *State ex rel. Dalton v. Dearing*, 364 Mo. 475, 263 S.W.2d 381, 386 (1954), the Missouri Supreme Court refused to invalidate a gubernatorial appointment to a metropolitan transportation commission made 67 days *after* the time fixed in the Constitution.

In reaching this conclusion the court said, quoting in part from an earlier Missouri case, *State ex rel. City of Carthage v. Hackmann*, 287 Mo. 184, 229 S.W. 1078, 1080 (1921):

"Another general rule of importance in determining the true meaning and scope of constitutional or statutory provisions is the intent and purpose of the lawmakers. "* * *

"There are certain well-understood rules laid down by the courts for the construction of constitutional provisions, and they are the same as those governing legislative enactments. It was said [in a prior case] in discussing the general rules of construction of constitutional provisions that the organic law is subject to the same general rules of construction as other laws, due regard being had to the broader objects and scope of the former, as a charter of popular government. The intent of such an instrument is the prime object to be attained in construing it. "In 12 Corpus Juris, 700, [16 C.J.S.2d § 16 at Constitutional Law 73–74], it is said: The court, therefore, should constantly keep in mind the objects sought to be accomplished by its adoption, and the evils, if any, sought to be prevented or remedied.

"And also in 12 Corpus Juris, 702, [16 C.J.S.·§ 18 at Constitutional Law 80], it is said: If a literal interpretation of the language used in a constitutional provision would give it an effect in contravention of the real purpose and intent of the instrument as deduced from a consideration of all its parts, such intent must prevail over the literal meaning."

In *Guiseppi v. Walling*, 144 F.2d 608, 623–624 (2d Cir. 1944) the late Judge Learned Hand, in a concurring opinion, said:

" * * * There is no surer way to misread any document than to read it literally * * * As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to define how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final."

*In Re Opinion of the Justices*, 252 Ala. 194, 41 So.2d 559, 563 (1959). The court, in substituting the word "and" for the word "or," said:

"It is familiar law in the interpretation of statutes, constitutional amendments and other writings, that the intent of such writing is the substance and the verbiage is mere form, and courts are at liberty in ascertaining the intent to hold that the disjunctive conjunction 'or'. and the conjunctive conjunction 'and', sometimes carelessly used, are interchangeable, to discover the intent of the writing."

An Arizona case, *Board of Supervisors v. Pratt*, 47 Ariz. 536, 57 P.2d 1220, 1223 (1936), while refusing to depart from the literal language of a constitutional amendment, had this interesting comment:

"It is only where there is no doubt as to the intention of those who frame an amendment or statute that a court may modify, alter or supply words that will 'obviate any repugnancy to or inconsistence with such intention,' and by so doing permit 'particular provisions' to be read or construed otherwise than 'according to the literal meaning.' "

In *Schaefer v. Thomson, et al.,* 240 F.Supp. 247, 252 (D.C.Wy.1964), the court was confronted with a Wyoming statute dealing with reapportionment which a number of citizens claimed violated the provisions of the Wyoming Constitution.

At the time suit was brought, a literal compliance with that provision would have resulted in a legislature substantially in excess of 300 members. In discussing this the court said:

"However, it is obvious that the Wyoming Constitutional Convention which agreed upon a state constitution intended

that the legislative bodies should be comparatively small. It could not have envisioned such an absurd result as would be brought about if the state senate is constituted with each county as a senatorial election district and the county with the least population fixing as near as may be the minimum unit for district representation. While the wisdom or policy of constitutional provisions are not to be questioned, still courts are not required to act in a manner which brings about such palpable absurdities. 16 C.J.S. Constitutional Law § 18; 16 Am.Jur.2d Constitutional Law § 76."

The Illinois Supreme Court refused to follow the literal constitutional language in *Mitchell v. Lowden*, 288 Ill. 327, 123 N.E. 566, 569 (1919) when that course would have led to unintended consequences. The court said:

"[I]t is argued that the language of the Constitution, and the law itself, is not obscure or uncertain, but is definite and unambiguous and leaves no room for construction. * * * This is literally true, but it is perfectly clear that it is not the meaning of the Constitution that the law did not, therefore, receive a constitutional majority; for such meaning involves the absurdity of holding that the framers of that instrument, and the people in adopting it, intended to prohibit the creation of a debt * * * unless the proposition for its creation should receive at an election a greater vote than all the electors were entitled to cast * * * A constitutional provision must be construed like a statute with reference to the object to be accomplished, and when the real purpose is apparent the language must be construed so as to carry the purpose into effect. * * * Not the letter of the law only, its mere words, but its spirit and object, must be taken into consideration, and when a particular intent to effect a specific purpose is manifest, respect must be paid to that intent. When the words of a statute, followed literally lead to an absurd consequence, there is sufficient reason to depart from the language."

Somewhat analogous to the present case is *In Re Advisory Opinion to Governor*, 223 N.C. 845, 28 S.E.2d 567, 570–571 (1944), which involved a North Carolina constitutional provision prohibiting a person from holding two offices of trust or profit at the same time. The comptroller of the State Board of Education asked a leave of absence so that he could accept a temporary captaincy in the United States Army. The direct question was whether the applicant would have to give up his State position in order to become a member of the Armed Forces. It was conceded that the acceptance of a second office forbidden by this constitutional provision would operate ipso facto to vacate the first office. The only question was whether under these circumstances captaincy in the Armed Forces constituted accepting a second office.

The court held it did not and in doing so made several significant statements including the following:

"Certainly the spirit of the Constitution would envisage [no such result]. 'The meaning of a Constitution is to be found, not in a slavish adherence to the letter, which sometimes killeth, but in the discovery of its spirit, which giveth life.' * * * If need be, the letter gives way to promote the equity of the spirit. An inhibition or prohibition usually extends no farther than the reason on which it is founded. * * *"

Later in that opinion the court said:

"A constitution should not receive a technical construction, as if it were an ordinary instrument or statute. It should be interpreted so as to carry out the general principles of the government, and not defeat them."

For other general statements lending substantial support to my view *see State v. School District No. 1 of Fergus County*, 136 Mont. 453, 348 P.2d 797, 801, 78 A.L.R.2d 1012 (1960); *State v. Toberman*, 363 Mo. 245, 250 S.W.2d 701, 705 (1952) (an en banc); *Board of County Commissioners v. McCulloh*, 52 N.M. 210, 195 P.2d 1005, 1008 (1948); *Mahood v. City and County of Den-*

*ver*, 118 Colo. 338, 195 P.2d 379, 380 (1948); *Flaska v. State*, 51 N.M. 13, 177 P.2d 174, 176, 180 (1946); *Bailey v. Abbington*, 201 Ark. 1072, 148 S.W.2d 176, 178–180 (1941); *Clark v. Boyce*, 20 Ariz. 544, 185 P. 136, 140 (1919).

Nor is Iowa without language which gives some indication of what our conclusion should be. In *Ex Parte Samuel Pritz*, 9 Iowa 30, 32 (1858), this court stated:

"In the interpretation of the Constitution * * * we are to ascertain the meaning by getting at the intention of those making the instrument.

"What thought was in the minds of those making the Constitution—[w]hat was their intention, is the great leading rule of construction."

In *Edge v. Brice*, 253 Iowa 710, 718, 113 N.W.2d 755, 759 (1962) we said:

"It is proper in our determination to consider the intention of the framers of the provision as the language used, the object to be attained, or the evil to be remedied, and the circumstances at the time of the adoption indicate."

In *Cedar Memorial Park Cemetery Association v. Personnel Associates, Inc.*, 178 N.W.2d 343, 347 (Iowa 1970), this court said that in interpreting statutes our obligation is "to seek out the intention of the legislature and to avoid placing upon statutory language a strained, impractical, or absurd construction." *See also Janson v. Fulton*, 162 N.W.2d 438, 442, 443 (Iowa 1968).

In a recent case, *Pitcher v. Lakes Amusement Co.*, 236 N.W.2d 333, 335–336 (Iowa 1975), we were considering an attack on Article I, § 9 of the Iowa Constitution involving the right to trial by jury. In reaching the conclusion that a statute which authorized a jury of less than 12 did not offend against that provision of the Constitution we said:

"Time has increasingly demonstrated it was illogical to freeze forever our conception of a jury trial. * * *

"* * * Constitutions must have enough flexibility so as to be interpreted in accordance with the public interest.

This means they must meet and be applied to new and changing conditions."

I am convinced the case now before us meets all the criteria set out in the foregoing cases to a marked degree.

No matter which standard we turn to—the "intent of the instrument;" or "the objects sought to be accomplished;" or the compulsion to avoid "palpable absurdities;" or the necessity of meeting "new and changing conditions;" or the rule that "a prohibition usually extends no farther than the reason on which it is founded"—this case is a classic illustration that it is sometimes folly to insist literal language must be followed to the exclusion of all else.

I am not unmindful of the strong language used in cases like *Hunter v. Colfax Consolidated Coal Company*, 175 Iowa 245, 270–273, 154 N.W. 1037, 1047 (1915). I do not say a court should place upon a constitutional provision (or upon a statutory enactment) a construction to suit its own ends or to achieve what it considers desirable. I say only that if a result reached by pointless adherence to words alone is indefensible beyond all doubt, it need not be upheld.

I recognize this is not to be undertaken lightly. In *Kruidenier v. McCulloch*, 261 Iowa 1309, 1315, 158 N.W.2d 170, 174 (1968), we considered the judicial correction of legislative errors this way:

"The specter of abuses resulting from a judiciary too quick to intervene for the correction of legislative ambiguities, mistakes, errors and omissions is too obvious to require extended discussion. The evils resulting therefrom would be far greater than those which such action was designed to prevent."

Failure to give true effect to the constitutional intent in this case would present a judiciary too slow, rather than too quick, to intervene.

In the *Kruidenier v. McCulloch* case reported at 258 Iowa 1121, 1131, 142 N.W.2d 355, 361 (1966), we said this court is the final arbiter of what the Iowa Constitution means. We must, and should, accord the

provisions of that instrument a meaning which gives life and substance to its objects and purposes. Instead the petitioner and intervenor ask the court to thwart what they concede to be the intention of the disputed amendment.

Frequently courts are said to reach absurd results when they themselves regard their conclusions as sound and logical. Ironically, the court is now importuned to *deliberately* reach an absurd result.

For me, at least, that argument includes its own denial. I would hold the 1962 Constitutional Amendment does not prohibit the appointment of district judges to the office of judge of the court of appeals.

For the reasons stated, I concur only in the result reached by the majority of the court.

MASON and HARRIS, JJ., join this special concurrence.